# James *v.* The State.

*Indictment for Robbery.*

1. *Section 4187 of Revised Code; what not repealed by.*—The statute forbidding any objection to an indictment, by plea in abatement, or otherwise, on the ground that any member of the grand jury was not legally qualified, &c., has not been repealed by the act of March 15th, 1875, making it the duty of the court before administering the oath to any grand, petit, or *tales* juror to ascertain that he possesses the statutory qualifications.

2. *Indictment; what not essential to validity of.*—It is not essential to the validity of an indictment, that the record should show that, before administering the oath to the grand jurors, the court ascertained that they possessed the statutory qualifications.   It will be presumed that the court did its duty in this respect, from the fact that the jurors were sworn, and the fitness of the grand jurors, being left to the discretion of the court, its judgment upon them is not revisable.

3. *Plea in abatement; when insufficient.*—A plea in abatement to an indictment, alleging, not that any of the grand jurors who found the indictment were incompetent, but that the court did not ascertain their competency to discharge their duties with honesty, &c., or that they possessed the other legal requisites, and offering to verify it by the record, which was silent on these points, it is no answer to the indictment, and presents a merely immaterial issue.

4. *Sustaining general demurrer; when not ground for reversal.*—A mere general demurrer may be overruled for that reason ; but where such a demurrer was sustained to a plea which is insufficient, and tenders an immaterial issue, is not ground for reversal.

Vol. LIII.

[James v. The State.]

5. *Empaneling jury, objection to manner of; when comes too late.*—Where the defendant neither makes inquiry, nor requests the court to make any, respecting certain qualifications of petit jurors, but accepts some and challenges others, who were sworn as put upon him, he cannot wait until the jury is completed, and then object to the jurors on the ground that the court did not first ascertain that they possessed the requisite qualifications—especially is this the case, when it is not alleged that any of the jurors are in fact disqualified.

6. *Same.*—An objection to the panel and each member, in a capital case, on the ground that nine jurors, after they had been accepted and sworn, were allowed by the court, without consent given or objection raised by the defendant, to leave the court room and mingle with the people outside, for the space of an hour, while the sheriff was engaged in summoning other jurors, —comes too late, if delayed until the jury is completed.

7. *Robbery; what essential to constitute.*—It is essential to constitute a robbery, that some property be feloniously taken ·by violence from the party robbed. The value of the property taken is immaterial, and where the property was a sack of flour and a jug of whiskey, which a witness testified he "purchased," the jury are justified in finding it was of some value, without more specific proof on that point.

8. *Taking; what sufficient.*—Where a person, traveling in company with the owner, is entrusted with goods to help carry them along, and by violence, feloniously exerted against the person of the owner, carries off the goods, he is guilty of robbery. The robber's possession of the goods, up to the time of the felonious violence, is constructively the possession of the owner, and the taking being in his presence, is constructively from his person.

9. *Sentence; what erroneous.*—Upon conviction for robbery, the defendant may be punished, at the discretion of the jury, by death, imprisonment in the penitentiary not less than ten years, or at hard labor for the county for the same period. If the court instructs the jury, that if they do not see fit to inflict the death penalty, they must affix imprisonment in the penitentiary for a term not less than ten years, nothing being said about hard labor for the county, and the defendant excepts, and is sentenced to the penitentiary, the judgment will be reversed.

APPEAL from Circuit Court of Dallas.

Tried before Hon. GEORGE H. CRAIG.

The appellant was indicted for and convicted of robbery. The evidence showed that he and one Hardy were traveling along the same road, and that the articles taken, contained in a bag, were handed by witness to defendant to be carried for him. They walked along together for about three quarters of a mile, and left the road, and were then in a field, when defendant, who was walking by the side of witness, took a step backwards, and knocked the prosecutor down and insensible, carrying off the goods, consisting of a sack of flour and jug of whisky. This was after dark, and no other persons were in sight. The only evidence of their value was the testimony of the prosecutor, who testified that he purchased them.

The record is silent as to whether the judge, before charging the grand jury, ascertained that they possessed the qualifications required by law. The failure of the court to ascertain the qualification of the grand jury was made the

[James v. The State.]

matter of two pleas in abatement, to which the State interposed a general demurrer, that neither of them was a good or sufficient answer in law to the indictment. The court sustained the demurrer, and an exception was reserved to its ruling. The defendant then pleaded not guilty, and a trial was had upon that plea.

As each juror was drawn, he was asked the usual questions as to his residence, citizenship, relationship to defendant, and whether or not he had a fixed opinion of the guilt or innocence of the accused, or was opposed to capital or penitentiary punishment, or to a conviction on circumstantial evidence. These were all the questions asked the jurors, and no other evidence of their qualifications was taken.

Defendant neither objected nor excepted to any of the questions asked, nor did he offer to prove that any cause of challenge existed, or request the court to take any other evidence of the qualifications of the jurors.

Nine jurymen had been duly empaneled, when the *venire* became exhausted, and while the sheriff was engaged in summoning talesmen to complete the jury, the court excused the jurors then selected, for one hour, and they left the box and mixed with the crowd around the court house, the defendant at this time not making any objection.

At the expiration of the hour, the jury was completed, the defendant having exhausted his challenges. The defendant then challenged the array, on the grounds that the court had not ascertained the qualifications of the last three jurors, and separately challenged each of the first nine, because they had been allowed to leave the jury box. The court refused to allow these challenges, and defendant duly excepted.

The court then charged the jury in substance. 1st, The value of the thing taken does not enter into this case. 2d, That the possession of the defendant, under the circumstances as detailed by Hardy, was, in law, in the possession of Hardy. The court, in summing up, used the following language: "if you find the defendant guilty, it is discretionary with you to inflict death upon him as a punishment, or if you think he is guilty and do not see fit to inflict the death penalty, you may imprison him in the penitentiary for not less than ten years." The defendant excepted, separately, to these charges.

The defendant then requested nine written charges, some of which were given, and others refused; those refused, and to which exceptions are reserved, asserted, in substance, that the value of the things taken from the person robbed,

[James v. The State.]

must be shown by the evidence, and that if there was an entire absence of proof as to the value of the things so taken, the defendant was entitled to an acquittal; that the taking must have been from the person of the person robbed and that if the violence was done after the taking possession, the jury must acquit; that if the owner of the property delivered it to the defendant for the purpose of carrying it along, and that after he had possession of the property, he knocked the owner down, and carried off the property, he was not guilty of robbery.

The jury found the defendant guilty as charged, and assessed his punishment at ten years in the penitentiary.

Sustaining the demurrer to the pleas, and the charges given and refused, are now assigned as error.

JOHN P. TILLMAN and WM. R. NELSON, for appellant.—The demurrer to the pleas was general, and should have been overruled. Brickell's Dig. vol. 2, 347, § 277. *Pomeroy* v. *The State*, 40 Ala. 63; *Morton* v. *Bradley*, 30 Ala. 683. The pleas were good, and it was proposed to verify the same by the record. The statute was *imperative* upon the court. Section 4087 of the Revised Code is repealed by the act of March 15th, 1875, and the challenge to the array was proper, and should have been allowed. *Hughes* v. *State*, 1 Ala. 657; *State* v. *Clarisa*, 11 Ala. 61.

The thing taken must be of some value, and it must so appear from the evidence.

The law allows the jury the discretion between the penitentiary and hard labor for the county. The charge of court took from the jury this discretion, and was therefore erroneous. *Hall* v. *The State*, 40 Ala; *Robertson* v. *The State*, 42 Ala. 509; and cases there cited.

JOHN W. A. SANFORD, Att'y Gen., *contra.*—The pleas were insufficient, and the demurrer was properly sustained; the law presumes the court has done its duty, unless the contrary appears clearly from the record.

Allegation and proof of value are not necessary, and the charges asked should have been refused. *Jones* v. *The State*, 13 Ala. 153.

The owner of the goods did not divest himself of the title by entrusting them to defendant. By violence the defendant deprived the owner of his property, and he thereby committed robbery. *Connor* v. *James*, 1 Peck, 375; S. C. 2 Leading Crim. Cases, 139, and authorities cited. The separation of the jury, during the trial, cannot work a re-

versal. *Robbins* v. *The State,* 49 Ala. 394; *Morgan* v. *The State,* 48 Ala. 65. The accused had the right to examine each of the jurors, and his failure to do so is a waiver of this right. *Brown* v. *The State,* 52 Ala. 345.

MANNING, J.—By § 4063 of the Revised Code, it is made the duty of the sheriff, judge of probate, and clerk of the circuit court in each county, bi-ennially, to make a list of the names of "such persons as, in their opinion, are competent to discharge the duties of grand and petit jurors, with honesty, impartiality and intelligence, and are esteemed in the community for their integrity, fair character and sound judgment; but no person is to be selected who is under twenty-one years of age, or over sixty years of age, or who is a habitual drunkard, or who is afflicted with a permanent disease."

Section 4087 of the Revised Code was as follows: "It is the duty of the court before *charging* the grand jury, to ascertain whether the jurors possess the requisite qualifications; and no challenge to the array of the grand jury can be interposed by any person." An act to amend this section, approved March 15th, 1875, repeals it and enacts the following substitute : "It is the duty of the court, before administering the oath prescribed by law, to any grand, petit, or *tales* juror, to ascertain that such juror possesses the qualifications required by § 4063 of the Revised Code, and the duty required of the court by this act shall be considered imperative."

The record made of the organization of the grand jury, which found the indictment in this cause, did not show affirmatively that the court made any inquiry, or thought it necessary to make any inquiry in regard to the qualifications of the members of that body, and the defendant, therefore, filed two pleas in abatement alleging that the court did not, before the jurors were sworn, ascertain that they were competent to discharge their duties as such with honesty, impartiality, and intelligence, &c., and were not under twenty-one years of age, or over sixty years of age, or habitual drunkards, or afflicted with a permanent disease; and offering to verify these allegations by the record.

The pleas did not designate any of said grand jurors as, or aver that any of them were, incompetent, according to section 4063, or should have been excluded by virtue of its provisions.

The State interposed a demurrer to these pleas, on the ground that they were no answer to the indictment; and the

ruling of the court sustaining the demurrer is assigned as error.

To the objection that the demurrer should have been overruled because it did not sufficiently specify the particulars in which the pleas were insufficient—we answer: although the court might for that cause have refused to examine the pleas for defects therein, and have properly overruled the demurrer ; yet, if the pleas are manifestly insufficient, and no answer to the indictment, and the court properly so decided, we will not reverse its judgment sustaining the demurrer. *Whitten* v. *Graves*, 40 Ala. 578.

The question then is, were the pleas defective ? It is insisted that as under the statute of March 15th, 1875, the duty of ascertaining that jurors possessed the qualifications of intelligence, integrity, &c., was made imperative on the judge, the record should show that it was performed. The section, 4087, before it was amended, made it *"the duty* of the court, before charging the grand jury, to ascertain whether the jurors possessed the requisite qualifications, " which were previously prescribed; and a *duty* required by law to be performed, is imperative, whether declared to be so or not. But it has never before been thought necessary that the record should recite that the court did perform the duty of ascertaining whether the grand jurors it empaneled and charged, were qualified or not. That is necessarily implied by the fact that it accepted them as qualified. The judge might have been acquainted with each individual juror, and so have been able to determine the fact of his fitness, without making any inquiry. Besides, his judgment in regard to the honesty, impartiality, and intelligence of the jurors must necessarily be conclusive, not to be reviewed and overruled in an appellate court.

Moreover, section 4187 provides that "no objection can be taken to an indictment by *plea in abatement,* or otherwise, on the ground that any member of the grand jury was not legally qualified, or that the grand jurors were not legally drawn or summoned, or on any other ground going to the formation of the grand jury, except that jurors were not drawn in the presence of the officers designated by law." This section has not been repealed. And the object of the act of March, 1875, appears to have been to authorize and enjoin upon the court to see to it that not only in the composition of the grand jury, but also of the petit jurors (a dangerous power if the judge be corrupt), only those should be empaneled whom he considered qualified according to the laws.

There was no error in sustaining the demurrer to the pleas in abatement.

The objection that the record does not show that a copy of the indictment, and of the list of jurors summoned for the trial, was not duly served on defendant, is a mistake of fact. The sheriff's return in the record shows that this duty was performed.

In selecting jurors for the trial of the cause, the court caused eight questions to be put to each person of the fifty summoned, that was present when his name was called, and from the whole number obtained only nine who were sworn. And then while the sheriff was employed in summoning a number of other persons from whom to choose the three necessary to complete the panel, the nine already sworn were permitted, by the court, without the express consent of defendant, but also without objection on his part, to retire from the jury bench and remain out of the court house, dispersed among the people there, for the space of an hour; at the end of which, and from persons summoned in the meantime, by the sheriff, the jury was completed, with three others to whom also the eight questions referred to were put and answered. None of these questions inquired of the jurors, in respect to their honesty or intelligence, or their reputation among their neighbors, or their age, or whether they were afflicted with any permanent disease. Nor did defendant ask or request the court to ask any questions touching these matters of themselves or anybody else. With the first nine jurors he expressed himself satisfied as they were put upon him ; and his peremptory challenges being exhausted, he expressed no dissatisfaction with, or approbation of, the other three. But after they were sworn in, he objected to all and each of the jurors, because the first nine had gone out among the people, after they were sworn; and second, because none of the twelve had been interrogated as to their qualifications, under section 4063, and no inquiries were at that time made of others, on that subject.

The defendant made no objection to the permission of the court to the nine jurors to go out of the court house, while the sheriff should summon other persons from whom to complete the jury, either when they were permitted to disperse,or when they first came back, but proceeded to the selection of the other three jurors, and after they were sworn, made his objection to all and each. If he had any objection to the temporary dispersion of the nine jurors he should have made it known before they went out, or at any rate, before he proceeded to the completion of the jury with the talesmen.

[James v. The State.]

See *Robbins* v. *The State*, 49 Ala. 394; *Williams* v. *The State*, 45 Ala. 57.

The reasoning above shows that, in our opinion, there was no error which this court can notice, in the omission to ask the jurors other questions than the eight contained in the record, or making other inquiries in respect to their qualifications. Besides that the judge may have personally known the jurors and so have ascertained their fitness, or may have ascertained it to his satisfaction by means of their answers to his questions, and their known reputation for integrity and intelligence, his judgment in respect to such qualifications could not be reviewed in this court. Defendant has not indicated any juror as incompetent in any respect; nor did he propound, or ask to have propounded, to any of them, or to any other person, any question touching or implying a doubt of their competency before the jury was complete, and each member of it sworn. *Guice* v. *The State* (in MS.) January T. 1874; *Joe Brown* v. *The State*, 52 Ala. 352.

The articles taken by defendant from witness at the time of the supposed robbery, were a sack of flour and a jug of whisky; which witness testified he "had purchased" in Selma. This was evidence of their value. The court and jury would take notice, if necessary, that such articles had a value when the prosecution was for feloniously taking them by violence from the owner of them. Roscoe (Evidence in Crim. Cases, 908) says: "It must be proved that some property was taken, . . . . but the value of the property is immaterial. A penny, as well as a pound, forcibly extorted constitutes a robbery, the gist of the offence being the force and terror. Thus, when a man was knocked down, and his pockets rifled, but the robbers found nothing but a slip of paper containing a memorandum, an indictment for robbing him of the paper was held to be maintainable." There was *property* in the goods taken, shown to be in the witness; and the charge of the court was not erroneous in respect to the question of value.

The testimony shows that the defendant and witness, Hardy, were traveling together, along the same road, and that the articles taken, contained in a bag, were handed by witness to defendant to be carried for witness. They were walking along together, continued to do so for about three-fourths of a mile, and had gotten out of the road into a field, when defendant, "who was then walking by witness' side, and carrying said things for him, took a step backwards, and struck witness behind on his neck, knocking him down and insensible. This was after dark, and no other persons were

[James *v.* The State.]

near or in sight;" and when witness recovered conscious-
ness, defendant was gone and also the sack of flour and jug
of whisky.

Up to the time of the blow, there was no appropriation of
these articles by defendant, or denial of the property of wit-
ness in them. They were in the presence, and construct-
ively in the possession of witness. Defendant may have
well supposed that he could not get away with them, they
being heavy, without first knocking down and disabling their
owner. And although they were in the hands of defendant,
carried by him at the request of the owner, they were not
taken from him, he being constructively in possession, and
they being in his presence as his property, until he was
stricken by defendant and knocked down. The violence
was not done after the goods were taken away, but they
were taken away after and by means of the violence to the
person of the owner. The court's charge was in this par-
ticular according to law, and there was no error in refusing
the charges asked in regard to this point.

The Revised Code provides (§ 3668) that any person con-
victed of robbery shall be punished, at the discretion of the
jury, by death, or imprisonment in the penitentiary not less
than ten years, or by hard labor for the county not less than
ten years. The court charged the jury that if they found
the prisoner guilty, it was discretionary with them to deter-
mine whether he should be punished by death or by
imprisonment in the penitentiary, not less than ten years,
and after prescribing the form of the verdict in the former
case, added: "if you find the defendant guilty, but do not
see fit to inflict death upon him as the punishment for this
offense, you will say—"we the jury find the defendant guilty
as charged in the indictment, and that he be imprisoned in
the penitentiary for a term not less than ten years." And
this was excepted to by the defendant.

Nothing was said in any instruction of the court, set forth
in the bill of exceptions, of the authority of the jury to pun-
ish, by hard labor for the county, for a term not less than
ten years; and the verdict was that he be sent to the peni-
tentiary for that period. The court erred in so instructing
the jury as to restrict them from deciding that defendant
should be punished otherwise than capitally or by imprison-
ment in the penitentiary. And for this error the judgment
must be reversed and the cause remanded.

But appellant must remain in custody until discharged
by due course of law.