34 So.2d 857

## TUNSTILL v. STATE.

### 8 Div. 613.

Court of Appeals of Alabama.
March 2, 1948.

Rehearing Denied March 16, 1948.

Grady J. Long, of Hartselle, for appellant.

A. A. Carmichael, Atty. Gen., and L. E. Barton, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant was indicted for and by a jury convicted of the offense of robbery.

The evidence introduced by the state tended to show that on 16 October 1946 Mr. Sam Drinkard, a farmer living in the southern part of Morgan County, came to Decatur for the purpose of buying a truck. He had with him about $995 in a wallet in a buttoned pocket of his overalls.

During the afternoon while walking on the streets of Decatur he was hailed by the appellant and one Crayton Morrow, who greeted him with the remark: "Hello old fellow. Where are you going?" They entered into conversation with him and he told them about his search for a truck. He did not at first recognize the pair, but later realized he had seen the appellant two or three years before when appellant drove a truck out in his section of Morgan County. Drinkard expressed his intention of getting something to eat and invited the appellant to accompany him to a restaurant. Both men ate, and Drinkard paid the bill and in appellant's presence removed a bill from his wallet with which to pay the check.

The appellant then told Drinkard he had a room rented in Decatur and invited him to the room for a drink. They went to appellant's room which was over a cafe. When they entered the first floor the appellant disappeared for a moment, then returned and he and Drinkard went to the men's room on the first floor. There appellant produced a half pint bottle of whiskey and the two proceeded to drink about half

of it. They then walked up the stairs and entered room No. 7, where they found Morrow seated on the bed.

The three men engaged in a friendly conversation. Appellant was on one side of Drinkard in a reclining position, resting on his elbow, and Morrow sat on appellant's other side. Morrow announced he had to leave, rose from the bed and walked over toward a window. He was in his shirt sleeves, and had his hands in his trouser pockets.

At this point we now quote from Mr. Drinkard's testimony:

"A. When Morrow got up and turned around and turned back to him, the sun was shining up through this window. It was getting pretty late in the evening; anyhow, it was shining in at the window; and when he got up and turned around that way to me, I never did know no more. I didn't know what went with the boys; that was the last thing I ever knowed until I come to·that night and went to the police station.

"Q. Do you know or do you not know—do you know whether anybody hit you or whether they didn't? A. I thought there was somebody hit me, but I didn't see them.

"Mr. Long: We object to what the witness thought, and move to exclude the testimony.

"Court: That isn't evidence, gentlemen.

"Q. Do you remember feeling any pain at that time, or any— A. No, I don't.

"Q. —or any lick? A. No, I don't. The only pain I had, when I come to my head was hurting; and I just reached up there and got it and reached here and felt and my pocket-book was gone."

When Drinkard came to he was in a room across the hall from the one he had originally been in. He had a wound on the left side of his head above the eye and this wound bled profusely.

Dr. N. H. Vinson testified that he attended Mr. Drinkard two days after this occurrence. He found a cut about an inch long over the corner of the left eye. The wound had become infected at this time. X ray pictures revealed two minute fractures in the skull under this wound.

The doctor further testified that a wound of this nature would bleed profusely at the time it was inflicted, and that the blow causing it could also bring on a concussion of the brain.

The remaining state witness was Mrs. Wille Mae Berryman. Mrs. Berryman was operator of the rooming house here involved. She testified that she first saw Mr. Drinkard about three o'clock on the afternoon of the day of this alleged robbery. Drinkard came to the rooming house in a taxi. As he walked in he was staggering.

She next saw Drinkard when he, Morrow, and the appellant came out of Room No. 7 about seven P.M. All three appeared to be drunk. Morrow and appellant were assisting Drinkard. She was in the upstairs hall at this time. No injuries or blood were on Drinkard's face at this time. When the two reached the stairway Drinkard began to fall down the stairs. The appellant made an effort to hold him, but both Drinkard and appellant fell all the way to the bottom of the stairs.

A man named Orr, who also roomed at Mrs. Berryman's, with the assistance of ap-. pellant, brought Drinkard back up the stairway, and placed him, at Mrs. Berryman's instructions, in a vacant room across the hall from Room No. 7. After placing Drinkard in this room Orr and the appellant left them there, closing the door as they departed.

As he was being assisted back up the stairs after his fall Mrs. Berryman saw that Mr. Drinkard's face was now bloody.

Mrs. Berryman did not see Drinkard that night after he was placed in the room, nor ·did she see the appellant and Morrow until they came to their rooms the next day.

This was all the evidence offered by the state.

At the conclusion of the state's case the appellant moved that the evidence of the state be excluded. This motion was denied by the court and appellant duly excepted.

The defense thereupon rested its case.

Two written charges, affirmative in nature, were requested by appellant and refused by the court.

After judgment the appellant duly filed a motion for a new trial, and upon such motion being overruled excepted to the court's action in the premises.

█ As stated by us in Root v. State, 32 Ala.App. 253, 25 So.2d 180, 181, certiorari denied 247 Ala. 514, 25 So.2d 182:

"Other than train robbery, which is defined by Section 416, Title 14, Code of Alabama, 1940, the offense of robbery is not covered by our Statutes. Section 415, Title 14, Code of Alabama, 1940, merely fixes the punishment for conviction of this offense.

"Under such conditions we must look to the common law offense of robbery as reflected in the opinions of the appellate courts of this State. Thomas v. State, 91 Ala. 34, 9 So. 81, 82, contains an excellent discussion by Justice McClellan of the offense of robbery. Therein he defines robbery to be 'a felonious taking of goods from the person of another, or in his presence, against his will, by violence, or putting him in fear. And this violence must precede or accompany the stealing.' In Hardis v. State, 28 Ala.App. 524, 189 So. 216, 217, in discussing the offense of robbery Judge Samford wrote: 'As defined by our decisions, robbery is an offense against both person and property, and is briefly defined as the felonious taking of money or goods of value from the person of another, or in his presence, by violence or by putting him in fear. Parks v. State, 21 Ala.App. 177, 106 So. 218.'"

█ It is axiomatic that in a criminal case the burden is on the state to prove, beyond all reasonable doubt, that the crime charged has in fact been committed, and that the accused is the person who committed it. Hill v. State, 207 Ala. 444, 93 So. 460. Neither of the above elements could be inferred beyond all reasonable doubt from the evidence presented by the state in this case. It may be said to have presented a picture which would cause this appellant to be suspicioned. But speculation and conjecture must be resorted to if the conclusion is to be reached that appellant exercised violence against Drinkard, or placed him in fear, and further speculation must be indulged to conclude that this appellant took, or caused to be taken, any

property from Drinkard's person. Satisfactory proof of either fact, that is proof meeting the standard required to sustain a criminal conviction, is lacking. Sympathy for Drinkard's plight cannot supply this defect. No rule is better settled than that a conviction in a criminal case cannot be sustained when predicated on suspicion, conjecture, or speculation.

It is our opinion therefore that the lower court erred in denying appellant's motion to exclude the evidence, made at the completion of the State's case, in refusing his written request for the affirmative charge, and in overruling his motion for a new trial. Perforce, this cause should be reversed, and it is so ordered.

Reversed and remanded.