105 So.2d 66

Jimmy WILSON

v.

STATE of Alabama.

2 Div. 388.

Supreme Court of Alabama.

June 12, 1958.

Rehearing Denied Sept. 11, 1958.

Judson C. Locke and Sheldon Fitts, Marion, for appellant.

John Patterson, Atty. Gen., and Wm. C. Younger, Asst. Atty. Gen., for the State.

88

STAKELY, Justice.

The appellant, Jimmy Wilson, was indicted for robbery. He was duly arraigned and pled not guilty and not guilty by reason of insanity. Later in open court he withdrew his plea of not guilty by reason of insanity. Trial was had before a jury which found him guilty of robbery and fixed his punishment at death. The sentence of the court was in accordance with the verdict of the jury. He duly filed a motion for a new trial which was overruled. This appeal comes to this court under the provisions of the automatic appeal statute (Title 15, § 382, subsections 1 through 13, inclusive, Code of 1940, Pocket Part).

There were four witnesses for the state namely, the prosecutrix, two taxi drivers and an Alabama Alcoholic Beverage Control Agent.

The prosecutrix testified that the appellant had worked for her on a previous occasion cutting hedges. He came to her house on the night of July 27, 1957, and said he had come to do some work. She replied that it was too late to work and she did not want any work done. He said, "Give me some water" and was told by her to go around to the back and get the water where he had gotten it when he cut the hedges. The man then went out and came in the back door. She asked him what he wanted and he said he wanted her money. She told him she had none and he said, "Yes, you have too." She then went to her wardrobe and got her purse and he told her to "pour it out on the bed." She then emptied her purse onto the bed. About $3.95 was poured onto the bed. There were three fifty cent pieces and the rest was quarters and smaller change. He then took most of the money which she had poured out of her purse. He then grabbed her and choked her, threw her on the bed and got on top of her. She stated, "He threw me on the bed, pulled off my stepins, and attempted to rape me, that is what he did."

He threatened her life if she moved. A light flashed outside. She testified that upon seeing the light he jumped up an told her he would kill her if she opened her mouth and then ran out the door. She went to the Perry County jailhouse two days later and picked Jimmy Wilson out of a lineup. When asked if she saw Jimmy Wilson in the courtroom, she said that she did not know and she then stated that she did not want to see him.

Ben Scroggins, a witness for the State, testified substantially as follows: I am an agent for the Alabama Alcoholic Beverage Control Board of the State of Alabama and was such agent on July 29, 1957. I was in Perry County on that date and came from Greensboro to see the Sheriff of Perry County on a business matter. I was stationed at Selma. I carried a prisoner, the defendant here, Jimmy Wilson, from Perry County to Dallas County for the Perry County officers. It was in the late afternoon. When I arrived in Selma I had a conversation with Jimmy Wilson in the Dallas County jail. There were also present at the time Jim Clarke, the Sheriff of Dallas County, and Mr. McLeod, the solicitor. No one in my presence offered Jimmy Wilson any reward or hope of reward to get him to talk nor did any one threaten Jimmy Wilson in any manner. I asked him if he was guilty. He first said he was not

and then he admitted that he was guilty. He said that he had been thinking about going to this lady's house and had it on his mind and planning it all day, that he and another colored person had drunk a bottle of wine and that he bought a half pint of whiskey which he and the other boy drank also, that he hired a colored taxi driver and asked him to take him to some colored woman's house in Marion. He didn't know the exact time but it was right around dusky dark. He got in the cab and the taxi cab driver drove (he named the street) him right near where Mrs. Barker lived. When the cab driver pulled up to this intersection he said, "Wait a minute. Let me get out right here." He then paid the cab driver and the cab driver drove off. He walked up to the front to the home of Mrs. Barker. He walked up on the porch and he could see Mrs. Barker sitting in the house. He opened the door and went in. She didn't know he was coming in until he had already entered the house. She asked him what he wanted. He said he wanted some money. She said she didn't have any money. He said that is what I came here for. "I want some money. I need it. Where is your money?" He said she walked to a wardrobe and picked up a pocket book and poured it out on the bed. He said he picked up three half dollars, one quarter and twenty-one pennies. Then he said he got hold to her and pushed her down on the bed. He sat down by the side of her and she sort of moved away and he put his arm around her and tried to force her back on the bed. She didn't respond to him and he caught her in the throat and he got up and pulled up her underclothes and he stood up over her and she tried to get up and he caught her in the throat and forced her back on the bed. He couldn't accomplish what he intended to and eventually he just walked away from her.

Clarence Hogue, a taxi driver and a witness for the state, testified that he received a call on the night of July 27, 1957, to go to Sylvia Moton's place and that he went to the place and talked to a man who wanted him to take him to Heiberger and that the man said he was in trouble. Hogue testified that he in no way threatened the man or offered him any reward to get him to talk. Hogue stated that he did not know the man at the time but from what he had read in the papers he learned his name was Jim Wilson and that he was sitting over by Judge Locke (defense counsel).

David Lucky, a witness for the state and a cab driver, testified that he was told by Clarence Hogue on the night of July 27, 1957, to pick up a man, that the man he later learned was Jim Wilson, that he took Wilson in his cab about six miles and a half going toward Browns Station at about 9 o'clock. He further stated that the passenger did not pay him the whole fare, but that he paid him three half-dollars, one quarter and fifteen cents in pennies and nickles.

■ I. There were objections of the appellant to the details of the alleged assault which was alleged to have been perpetrated against the prosecutrix. There was a motion for a mistrial made by the appellant on the theory that these details were inflammatory in nature and were not a part of the res gestae of the crime for which the appellant was indicted because the alleged assault took place after the alleged robbery had been completed. The court overruled the objections and the motion. In these rulings there was no error. This testimony was clearly part of the res gestae of the crime for which the appellant was indicted. In the case of Jackson v. State, 229 Ala. 48, 155 So. 581, 582, this court said:

"Everything constituting the one continuous transaction is admissible as of the res gestae. No matter how many distinct crimes may be involved, all the details of the one continuous criminal occurrence or adventure may be considered by the jury in passing on the culpability, the wickedness, and depravity of the crime for which the party is being tried. In cases of robbery the jury is given a wide range of dis-

cretion in fixing the punishment. They may look to all the circumstances constituting part of the res gestae in meting out punishment within the limits prescribed by law. It follows [that] all these circumstances are the subject of legitimate argument on the part of the solicitor."

See also Higginbotham v. State, 262 Ala. 236, 78 So.2d 637; Smarr v. State, 260 Ala. 30, 68 So.2d 6; Keith v. State, 253 Ala. 670, 46 So.2d 705.

■ II. The appellant insists that the court was in error in refusing the affirmative charge which was requested in writing by the appellant. The position of the appellant is that the testimony is not sufficient to show a robbery. There is no merit in this contention. In this state robbery is an offense which is not covered by statute, except for train robbery. Title 14, § 416, Code of 1940. Since this is the case we must look to the common law for its definition of robbery.

In Thompson v. State, 24 Ala.App. 300, 134 So. 679, 682, appears the following:

"In Douglass v. State, 21 Ala.App. 289, 107 So. 791, 793, this court said: 'There is no statutory robbery in this state. The common law prevails in Alabama as to this offense; and robbery, at common law, is an offense against both person and property, and is briefly defined as the felonious taking of money, or goods of value, from the person of another, or in his presence, by violence to his person, or by putting him in fear.' The punishment for robbery is of course fixed by statute. Code of 1923, § 5460."

See, also, Tunstill v. State, 33 Ala.App. 460, 34 So.2d 857, certiorari denied 250 Ala. 421, 34 So.2d 859.

It is argued that there was no taking from the person of another by violence to her person since the alleged robbery was completed before there was any violence. Obviously, however, if the prosecutrix was put in fear when her property was taken, there would be a robbery. Pretermitting the question of whether there was violence exerted against the prosecutrix, the evidence clearly admits of the inference that she was put in fear at the time of the taking. The evidence shows that a man unexpectedly appeared in the home of a woman in the night time while she was alone and demanded her money. It is plain common sense that the jury had a right to find that she was afraid and parted with her money because of her fear.

■ III. The indictment charges that "* * * Jimmy Wilson, * * * took three fifty cent coins and one twenty-five cent coin and twenty one cent coins, lawful coins of the United States of America of the value of one dollar and ninety-five cents * * *." The proof shows that the prosecutrix poured out of her pocketbook $2.95 or $3.95 onto the bed and that the defendant then took most of the money which she had poured out.

It is argued that there is a variance in the amount of money alleged in the indictment to have been taken and the amount shown by the evidence on the trial. Assuming that the testimony as to the amount of money taken is not in accordance with the allegations of the indictment, such a variance has been held not to be fatal. Richardson v. State, 237 Ala. 11, 186 So. 580.

■ IV. In the light of the verdict of the jury and the acts of the defendant, we have carefully examined the record to see if the defendant received a fair trial. Although the question is not raised, in the case of Johnson v. State, 242 Ala. 278, 5 So.2d 632, 636, rehearing denied 316 U.S. 713, 62 S.Ct. 1310, 86 L.Ed. 1778, this court said, "The question of due process is fundamental, sweeping aside mere procedural matter, but is not concerned with mere irregularities which do not form the basis of conviction."

The case was tried before a competent and experienced judge who appointed·

competent and experienced counsel to represent the defendant. The defendant did not take the stand but this was his right under our basic law.—Constitution of 1901, § 6. No witnesses testified in behalf of defendant, but there is nothing to show that there were such witnesses. Counsel did not see fit to cross examine the witnesses for the state. We have often said, however, that much must be left to the discretion of the attorneys in the conduct of a criminal case. We, therefore, cannot say that the defendant did not receive a fair trial. Huff v. State, 267 Ala. 282, 100 So.2d 769; Arrington v. State, 253 Ala. 178, 43 So.2d 644.

We conclude from our examination of the record that the verdict and judgment of the lower court is due to be affirmed.

If any clemency is to be extended to the appellant, it must come from executive action.

Affirmed.

All the Justices concur.

### On Motion for Rehearing.

We hope that this extension of the opinion is sufficient to answer those who have intentionally, or unintentionally, given the impression that the appellant has been sentenced to death for the larceny of a small amount of money.

■ The charge against the defendant is not simply that of stealing a small amount of money, viz.: larceny. The offense of larceny is not a crime of violence, while robbery, for which the defendant was tried and convicted, is the felonious taking of money or goods of value from the person of another, or in his presence, by violence to his person or by putting him in fear. In robbery the amount of the money or the value of the property taken is immaterial. This court has said:

"* * * Roscoe (Evidence in Crim.Cases, 908) says: 'It must be

proved that some property was taken, * * * but the value of the property is immaterial. A penny, as well as a pound, forcibly extorted constitutes a robbery, the gist of the offense being the force and terror. Thus, when a man was knocked down, and his pockets rifled, but the robbers found nothing but a slip of paper containing a memorandum, an indictment for robbing him of the paper was held to be maintainable.' * * *" James v. State, 53 Ala. 380, 387; 52 C.J.S. Larceny § 154 note 27, p. 1012.

The punishment prescribed for grand larceny is imprisonment in the penitentiary for not less than one year nor more than ten years, and for petit larceny imprisonment in the county jail, or sentenced to hard labor for the county, for not more than twelve months, and may also be fined not more than five hundred dollars, at the discretion of the jury. The punishment for robbery is death or imprisonment in the penitentiary for not less than ten years.

■ The punishment to be fixed for robbery is, within statutory limits, the exclusive province of the jury (section 415, Title 14, Code of 1940), subject, of course, to the power of the Governor to commute a death sentence, as noted in our original opinion where we said:

"If any clemency is to be extended to the appellant, it must come from executive action."

The testimony in this case clearly establishes beyond any doubt that robbery was committed by the defendant. Although not an essential of the offense, in this case the robbery was committed in the night time in the home of the victim. The trial court did not have, nor does this court have, authority to modify the punishment. Scott v. State, 247 Ala. 62, 22 So.2d 529. Under the Constitution of Alabama the power to commute a death sentence is vested exclusively in the

Governor. Constitution of 1901, § 124; Amendment 38 to the Constitution of 1901, Code 1940, Vol. 1, page 332; Montgomery v. State, 231 Ala. 1, 163 So. 365, 101 A.L.R. 1394; In re Upshaw, 247 Ala. 221, 23 So.2d 861.

Opinion extended and application for rehearing denied.

All the Justices concur.