The appellant was indicted and convicted for escaping from a penitentiary or guard under Section 13-5-65, Code of Alabama 1975. *Page 588 
The evidence is without dispute that on May 30, 1976, the appellant was serving a thirty year sentence for robbery and was assigned to Honor Camp No. 400 (Red Eagle Honor Farm) of the Alabama Prison System as a member of the inmate staff. On that day he was granted an eight hour furlough. The escape occurred when the appellant failed to return. He was eventually captured in Oregon.
The appellant's inmate file was admitted in evidence and reveals that the appellant was not on work release when the escape occurred. See Miller v. State, 349 So.2d 129
(Ala.Cr.App. 1977).
 I
The specific question initially presented by this appeal is whether the failure of a convict, sentenced to imprisonment in the state penitentiary, to return to his designated place of confinement from a permissive and temporary release (furlough, eight hour pass) is an escape within the terms of Section 13-5-65, Code of Alabama 1975. The appellant contends that the failure to return from a furlough is an escape within the meaning of Section 13-5-68, Code, governing escapes not otherwise provided for.
The appellant was indicted and convicted under Alabama's general escape statute for state prisoners which provides that:
 "Any convict who escapes or attempts to escape from the penitentiary or from any person or guard having him in charge under authority of law, either within or outside the walls of the penitentiary, before the expiration of the term for which he was sentenced, shall, on conviction, be imprisoned for an additional term of not less than one year."
The facts do not bring this case within the influence of any escape statute other than Section 13-5-65 (general) or Section 13-5-68 (escapes not otherwise provided for). The appellant was not sentenced to imprisonment in the county jail, Section 13-5-63; was not being removed from jail, Section 13-5-64; was not a United States prisoner, Section 13-5-66; was not being conveyed to the penitentiary, Section 13-5-67; was not on work release, Sections 14-8-8 and 14-8-42; and was not temporarily released for educational purposes or purposes of seeking employment and residence, Section 14-8-67.
Though there is some authority to the contrary, the majority view as recognized by a significant number of cases is that
 "for the purposes of a prosecution for escape from custody under a general escape statute, a prisoner remains, in law, as much in custody when he is allowed outside the prison without supervision as when he is confined within the prison walls."
76 A.L.R.3d 658 at 670 (1977).
The underlying theory is that the "critical factor" in escape is the
 "defendant's voluntary departure from an underlying and continuing `legal' custody by the institution of commitment of the person of the defendant — it being unessential whether at the particular moment of defendant's departure such `legal custody' is being objectively manifested in fact by a physical restraint of defendant's person."
 State v. Holbrook, 318 A.2d 62, 76 A.L.R.3d 646, 652
(Me. 1974).
Clearly, the granting of a furlough or temporary pass does not discharge the prisoner from legal custody. In no sense could it be said to constitute a release from the prisoner's term of sentence or confinement. Without question, the time the prisoner is outside the physical restraint of the penitentiary or of a guard while on a furlough is counted as part of his sentence.
Though this question has never been specifically answered before by the appellate courts of this State, some authority for the majority view exists.
 "By the giving of the bond the prisoner is not discharged from custody, but is as much within confinement as if enclosed within the walls of the jail, because the stipulation of the bond is that he will continue in the custody of the keeper of the jail, his steward, deputy or other officer within the prison bounds as by law *Page 589 
established. For the space of sixty days these bounds extend to the limits of the county; but after that period they were restricted to the walls of the jail; it is therefore just as much an escape to remain out of the jail, after the expiration of sixty days, as it would be within that. time to withdraw from the county."
McMichael v. Rapelye, 4 Ala. 383, 384-385 (1842).
In Thornton v. State, 356 So.2d 667 (Ala.Cr.App. 1978), this court held that the defendant was "not actually, but constructively, in jail at the time of his flight". There the defendant had been convicted for a felony and sentenced to ten years' imprisonment. He was a "penitentiary prisoner" though he had not yet been transferred to the penitentiary. The escape occurred when the defendant was in the sheriff's office waiting to be taken to a doctor's office for treatment. During the temporary absence of the deputy sheriff in whose custody the defendant had been, the defendant took flight and was therefore subject to prosecution under Section 13-5-65, Code (at that time Title 14, Section 153, Code of Alabama 1940). In Hall v.State, 352 So.2d 8 (Ala.Cr.App.), cert. denied, 352 So.2d 11
(Ala. 1977), this court held a defendant was, "in the statutory sense of the word, in the penitentiary", where he was serving his ten year sentence for robbery in the county jail, receiving time credit as though time were being served in the penitentiary and simply awaiting transfer to the penitentiary. The defendant was therefore properly prosecuted under Section 13-5-65.
While the legislature has seen fit to reduce the crime of escape from a felony to a misdemeanor for an inmate on the work release program, Miller v. State, 349 So.2d 129 (Ala.Cr.App. 1977), such reduction has not been extended to those inmates on furlough from an honor camp. Though the minimum statutory punishment permissible may be harsh in certain instances, it is not within the jurisdiction of this court to review sentences within statutory limits. Wilson v. State, 268 Ala. 86,105 So.2d 66 (1958); Smoke v. State, 347 So.2d 564 (Ala.Cr.App. 1977).
Based on the above, we find that a prisoner on furlough is as much in the legal custody of the institution for purposes of escape as is a prisoner confined within the prison walls. The appellant was therefore properly indicted and convicted under Section 13-5-65, Code, and the motion to exclude the State's evidence was properly denied.
 II
Because of his escape, prison disciplinary action was taken against the appellant resulting in his loss of twelve months' good time. The action of the Disciplinary Board and the conviction are based on the same factual situation. The appellant contends that the action of the Disciplinary Board constituted a bar to further prosecution for the same offense.
The double jeopardy provision of the Fifth Amendment is not violated because a prisoner is subjected to administrative punishment (either reclassification or loss of good time) by prison authorities for violating prison regulations and is also prosecuted in a criminal action based upon the same facts. Fanov. Meachum, 520 F.2d 374 (1st Cir. 1975); United States v.Stead, 528 F.2d 257 (8th Cir. 1975); United States v. Apker,419 F.2d 389 (9th Cir. 1969); United States v. Boomer,571 F.2d 543 (10th Cir. 1977). This is well established in the United States Court of Appeals for the Fifth Circuit. United States v.Herrera, 504 F.2d 859 (5th Cir. 1974); Gilchrist v. UnitedStates, 427 F.2d 1132, citing authority at 1133 (5th Cir. 1970). It is also the law in Alabama.
 "Infliction of disciplinary penalties to be endured contemporaneously with a sentence being served under a judgment of a competent court does not lengthen the court-imposed sentence. Therefore, the administrative determination does not put the convict in jeopardy because the punishment is only of a harsher degree (but within the law) and not of a new term."
 Artrip v. State, 41 Ala. App. 492, 493-494, 136 So.2d 574, 575 (1962). *Page 590 
We have carefully searched the record and finding no error prejudicial to the appellant affirm the judgment of the trial court.
AFFIRMED.
All Judges concur.