The defendant was found guilty of the first degree robbery of Charles Long. Sentence was twenty-five years' imprisonment.
 I
Although the State's evidence did not establish that $400.00 was stolen as alleged in the indictment, such a variance is not fatal to the robbery conviction. Wilson v. State, 268 Ala. 86,105 So.2d 66 (1958). In a prosecution for robbery, the value of the stolen goods need not be proved to be exactly as alleged in the indictment. Nolen v. State, 376 So.2d 1143, 1148
(Ala.Cr.App.), cert. denied, 376 So.2d 1148 (Ala. 1979).
 II
Although the pretrial showup identification of the defendant by the victim of the robbery was suggestive, after examining those factors which must be considered when evaluating the likelihood of misidentification, Jackson v. State,361 So.2d 1152 (Ala.Cr.App. 1977), we hold that the procedure was not so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny due process of law. As the trial judge remarked in denying the defendant's motion to suppress: "Sure it's suggestive. Just because it's suggestive doesn't throw it out." *Page 591 
The pretrial confrontation was held approximately twenty minutes after the robbery was committed. The victim, Charles Long, stated, "I think that's him" when the defendant was brought over to the police car in which Long was sitting. When an officer told Long that he had to be sure, Long replied: "(W)ell, where (are) the coat and hat? Put that on him." Long then made a positive identification of the defendant. On voir dire examination by defense counsel, Long was asked: "So you were able to pick him out by a coat and a hat?" Long answered: "Well, the face."
"Standing alone the fact that the accused wore a distinctive article of clothing may not have tainted the identification procedure." Brazell v. State, 369 So.2d 25, 29 (Ala.Cr.App. 1978), cert. denied, 369 So.2d 31 (Ala. 1979). The mere fact that an unusual number of policemen were present at the time of the pretrial identification does not render the confrontation procedure so unduly suggestive as to violate due process.Cartee v. State, 390 So.2d 1121, 1125 (Ala.Cr.App.), cert. denied, 390 So.2d 1126 (Ala. 1980).
Even if pretrial identification procedure employed in this case were unduly suggestive, the in-court identification of the defendant was still properly admitted because the prosecution established, by clear and convincing evidence, that the in-court identification stemmed from an independent source rather than the unfair pretrial confrontation. Cartee, 390 So.2d at 1123; Brazell, supra. See also Thomas v. State,399 So.2d 915 (Ala.Cr.App. 1981).
 III
We find the testimony of the victim sufficient to establish a prima facie case of first degree robbery and to support the jury's verdict thereof. Thus, the trial court properly overruled his motion to exclude. Lynn v. State, 380 So.2d 366
(Ala.Cr.App. 1980); Arnold v. State, 348 So.2d 1092
(Ala.Cr.App.), cert. denied, 348 So.2d 1097 (Ala. 1977).
 IV
The defendant contends that the trial court committed reversible error in overruling his objection to portions of the State's closing argument.
From the record:
 "MR. WHISONANT (Assistant District Attorney): They were very close to the wrecker company. They arrived there within just a few minutes, say five minutes. There they talked to the victim. He told them what happened. he described his assailant. He described the vehicle. They called back in and updated the description of the vehicle. He testified they were there within maybe 10 or 12 minutes, something along those lines.
 "MR. NEWMAN: Your Honor, just a second. I think I heard him testify to something that's not in evidence — argue something that is not in evidence as to what description was given to the police.
 "THE COURT: Ladies and gentlemen, in arguing the case these lawyers can give their best recollection of the evidence. They can also argue any inferences or conclusions that they can draw from the evidence. They can also argue if they desire their interpretations of the law. Of course what they say is not evidence. It's going to be up to you to decide what the evidence is in this case. You decide that, and I'll give you the law in the case. Overruled."
* * * * * *
 "MR. WHISONANT: Mr. Long testified he had a police scanner in his business that he listened to, I assume because of the nature of his work.
 "MR. NEWMAN: Your Honor, I object again. He's back on the track again of testimony that's not in evidence.
 "THE COURT: I've already said the jury has 12 minds and 24 ears. They heard the evidence. They'll decide what the evidence is. He can give his recollection. If there's a disagreement then they can argue that. If there is something absolutely not in evidence they can't argue that. *Page 592 
 "MR. NEWMAN: But Your Honor, that's absolutely not in evidence." (Emphasis added).
Defendant argues that the above underlined portions of the State's argument referred to substantive facts not before the jury.
The defendant is correct in arguing that the above arguments concerned facts not before the jury. The district attorney's statements related to evidence adduced during defendant's motion to suppress outside the jury's presence. However, we do not find the facts so prejudicial as to require a reversal.
Statements of counsel in argument to the jury must be viewed as in the heat of debate, and such statements are usually valued by the jury at their true worth and are not expected to become factors in the formation of the verdict. Hayes v. State,395 So.2d 127 (Ala.Cr.App. 1980), cert. denied, 395 So.2d 150
(Ala. 1981); McQueen v. State, 355 So.2d 407 (Ala.Cr.App. 1978). In reviewing allegedly inflammatory questions or remarks by counsel which may result in irreparable prejudice to the accused, no legal standard exists by which to judge the effect of such. Each case must be determined on its own merits with deference given to the issues, parties, and general circumstances of the particular case. Lawson v. State,377 So.2d 1115 (Ala.Cr.App.), cert. denied, 377 So.2d 1121 (Ala. 1979). See also Robinson v. State, 389 So.2d 144 (Ala.Cr.App.), cert. denied, 389 So.2d 151 (Ala. 1980); Madison v. State,55 Ala. App. 634, 318 So.2d 329, cert. denied, 294 Ala. 764,318 So.2d 337 (1975). The trial judge is in the best position to collect and weigh all of these considerations and great weight should be accorded his determination. Harrison v. State,340 So.2d 849, (Ala.Cr.App.), cert. denied, 340 So.2d 854 (Ala. 1976).
 "Where the trial court acts promptly to impress upon the jury that improper statements should not be considered by them in their deliberations, the prejudicial effect of such remarks is removed." Lawson, supra, at 1117.
In Flint v. State, 370 So.2d 332, 334 (Ala.Cr.App. 1979), this court stated:
 "To require a reversal on the ground that the prosecutor has made a statement unsupported by the evidence, the objectionable statement must be made (1) as of fact, (2) the fact must be unsupported by any evidence, (3) must be pertinent to the issues, and (4) its natural tendency must be to influence the finding of the jury."
Here the statements of the prosecutor did not have a natural tendency to influence the finding of the jury.
 "It is not every improper remark to which objection is not sustained which will require a reversal. . . . We do not regard the remarks in question as having a natural tendency to influence the jury adversely to the appellant or to have denied him a fair trial under the facts and issues of this case." (Citations omitted). Flint, supra, at 334.
 V
Finally, the defendant contends that the police had no probable cause to stop the vehicle in which he was riding.
On the motion to suppress, the State called the victim as its only witness. Mr. Long testified that between 8:40 P.M. and 9:00 P.M. he was closing his wrecker service in downtown Birmingham and observed a turquoise or greenish colored "sixty model series" Chevrolet or Buick drive slowly in front of his business and around the corner. Moments later, as Long was walking to his car, he was approached from the rear by a black male wearing a tan colored overcoat and a hat and carrying a sawed-off shotgun. The robber told Long that he was being robbed and took his watch, diamond ring and billfold. He immediately fled around the same corner where the car had turned shortly before the robbery. Mr. Long testified that the area was well lit. The robber was so close to Mr. Long that he could have touched him. The whole incident took about three minutes.
Mr. Long immediately telephoned the police and gave a description of the car, although *Page 593 
he did not know whether it was involved in the robbery. While waiting for the police to arrive he overheard on his police scanner the dispatch concerning the description of the car. The description stated the color as "dark". Long called the police station and added the specific color he had seen which was turquoise. He described the car as "greenish" in color.
About five minutes after the robbery, Birmingham Police Officer Joe Johnson and his partner arrived on the scene. Mr. Long gave them a description of the robber. Long could not testify as to whether it was broadcast over the police radio. He did not think that he had given such a description when he had earlier called the police to report the crime.
Approximately twenty minutes after the robbery, and about ten minutes after Officer Johnson arrived on the scene, Mr. Long was taken a short distance from the scene of the robbery to the scene of the defendant's arrest. Without hesitation, Mr. Long identified the automobile stopped as the one he had seen only moments before the robbery. He could not identify one of the occupants of the vehicle. However, after having the defendant put on a tan colored overcoat and hat, he positively identified him as the robber.
No other evidence was offered by the State to support the stopping of the vehicle.
During his direct examination, Long testified that the vehicle he had seen prior to the robbery contained two occupants. He stated that the color of the car initially attracted his attention as well as it being the only car on the street at that time.
At the scene of the defendant's arrest, Long identified the shotgun as the one used in the robbery. He subsequently identified his watch and ring and valued them at $65.00 and $600.00, respectively.
During the defendant's cross examination of Officer Johnson, he testified that the reason he and Long left the scene of the robbery was due to his hearing a police dispatch that "some units report(ed) seeing a car that fit our description." He drove Long to the scene of the arrest and arrived as the vehicle was being stopped. He described the vehicle as a light blue four door Buick. Officer Johnson did not stop the vehicle.
Initially, we note that this case is not analogous to Paschalv. State, 365 So.2d 672 (Ala.Cr.App.), reversed, 365 So.2d 681
(Ala. 1981). In Paschal, there was no evidence of the underlying circumstances which gave rise to the police dispatch. Thus, in Paschal the police dispatch alone was insufficient to meet the requirement of probable cause to search the defendant's vehicle.
In the instant case, the deficiency in Paschal is fully met by the testimony of Mr. Long. Consequently, the arresting officer could rely solely upon the police dispatch in stopping the vehicle as there was sufficient probable cause to support it. Parker v. State, 397 So.2d 199 (Ala.Cr.App.), cert. denied,397 So.2d 203 (Ala. 1981); Robinson v. State, 361 So.2d 379
(Ala.Cr.App.), cert. denied, 361 So.2d 383 (Ala. 1978); Bagonyv. City of Birmingham, 371 So.2d 80 (Ala.Cr.App. 1979); Owensv. State, 51 Ala. App. 50, 282 So.2d 402, cert. denied, 291 Ala. 794, 282 So.2d 417 (1973).
Therefore, the initial question is on what basis and with what knowledge or information did the arresting officer stop the vehicle in which the defendant was riding? There is no doubt that if the arresting officer relied upon the police dispatch, then he had sufficient probable cause in stopping the vehicle. Draper v. United States, 358 U.S. 307, 313,79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959).
While an officer may rely upon a police radio broadcast to stop and arrest a suspect, the subsequent determination by any court as to whether probable cause existed must turn on all the underlying circumstances giving rise to the police dispatch.Owens, supra. "Although a police officer is entitled to assume information dispatched over their official radio is supported by probable cause; however, where the contrary turns out to be true, an otherwise illegal arrest cannot be made legal merely because the officer was acting upon *Page 594 
a radio dispatch." Cook v. State, 377 So.2d 162, 163
(Ala.Cr.App. 1979); Paschal, supra.
The record sheds no light on what "facts and circumstances within the arresting officer's knowledge" were relied upon to stop the vehicle. The arresting officer was not called by the State as a witness. Thus, we can only speculate as the reason why he stopped the vehicle. While the implication is present, it cannot be assumed, in establishing probable cause, that the arresting officer stopped the defendant on the basis of a radio dispatch.
In addition, the record is void as to the nature and content of the police dispatch other than Mr. Long's testimony indicating that it initially reported the incorrect color of the vehicle. The record does not indicate with specificity whether the stopping of the vehicle occurred after Long had called in the correct color of the vehicle, although an inference in support of such a conclusion is possible.
Consequently, a wide gap in the State's proof exists. While the police dispatch could have been relied upon by the arresting officer in stopping the vehicle, this fact must be established at trial. Without such, the trial court could not properly determine the legality of the stop and arrest as there is nothing to show why the stop and arrest occurred.
We remand this cause to the circuit court in order that a hearing be held to determine the facts and circumstances within the arresting officer's knowledge at the time he stopped the vehicle in which the defendant was riding. The record and transcript thereof, along with the findings of the trial court, should be sent to this Court for review.
REMANDED WITH DIRECTIONS.
All Judges concur.
 ON RETURN TO REMAND
The record submitted on Return to Remand clearly shows that the defendant's automobile was stopped by the police on the basis of a radio dispatch which was in turn based on information provided by the victim. Added to the facts previously stated in this opinion, the record now supports the finding of probable cause made by the trial judge.
The judgment of the circuit court is affirmed.
OPINION EXTENDED; AFFIRMED.
All Judges concur.