86 So.2d 824

**Ben A. ZEMCZONEK**

*v.*

**Charles R. McELROY et al.**

**I Div. 652.**

Supreme Court of Alabama.

April 12, 1956.

Johnston, McCall & Johnston, Mobile, for appellant.

**260**

McCorvey, Turner, Rogers, Johnstone & Adams, Mobile, for appellees.

LAWSON, Justice.

This suit was brought in the circuit court of Mobile County by Ben A. Zemczonek against Charles R. McElroy and Baggett Transportation Company, Inc., a corpora-tion. The plaintiff sued under the homicide statute, § 119, Title 7, Code 1940, as father of Leonard V. Zemczonek, a minor, who lost his life as a result of a collision between Baggett's truck and an automobile owned by McElroy, in which young Zemczonek was riding.

To the first count, which charges simple negligence, each defendant separately pleaded the general issue and contributory negligence and to the second count, which charges wanton conduct, each defendant pleaded the general issue.

Affirmative instructions as to each count of the complaint were requested separately by the defendants at the conclusion of the evidence. All such charges were denied by the trial court except that requested by the defendant Baggett Transportation Company as to the wanton count, which charge was given.

There was jury verdict in favor of both defendants. Judgment was in accord with the verdict. Plaintiff's motion for new trial having been overruled, he has appealed to this court.

The collision occurred at about 3:30 A. M. on the morning of April 6, 1952, on U. S. Highway 43 in Mobile County at a point where the road was straight and level, but visibility was affected by darkness and by a heavy rainfall. The vehicles involved were meeting each other. The Baggett truck was travelling in a northerly direction and the McElroy automobile was going south.

McElroy, Leonard V. Zemczonek and Peter Zelvis, Jr., enlisted men in the United States Navy, were riding in the McElroy automobile. As shown above, Leonard Zemczonek was killed as a result of the collision, McElroy was injured to such an extent that he remained unconscious for about thirteen days, and Zelvis suffered a broken leg and other injuries. King J. Pierson, the driver and only occupant of the Baggett truck, was apparently uninjured.

McElroy, Zemczonek and Zelvis were re-turning to their station at Barin Field, Fo-

ley, Alabama, from a visit to their homes in Ohio. Zelvis testified that before leaving for Ohio he and Zemczonek agreed that each of them would pay McElroy one-third of the expenses incurred in making the trip. On direct examination McElroy made the following statement in regard to the expenses of the trip: "My understanding was we would just split it three ways, being there were three of us." On cross-examination he indicated there was no agreement that he would be reimbursed by Zelvis and Zemczonek but that he merely assumed such to be the case.

The McElroy automobile left the vicinity of Cleveland, Ohio, around five o'clock on the morning of April 5, 1952. It was driven continuously up to the time of the collision except for short stops for fuel and food. There is sharp conflict in the evidence as to who was driving the McElroy car at the time of the collision. Zelvis testified positively that McElroy was driving at that time, but stated that he and Zemczonek had done some driving on the return trip. Two naval officers testified that McElroy had stated to them sometime subsequent to the accident that he was the driver. McElroy testified that Zelvis did not drive the car at all on the return trip but that he and Zemczonek alternated in doing the driving and stated that at the time of the collision his automobile was being driven by Zemczonek.

Highway Patrolman Staggers, who reached the scene a few minutes after the collision, testified that he found the Baggett truck on the west side of the highway approximately 135 feet from the point where he determined from physical evidence that the impact occurred, which point he stated was in the eastern lane of traffic, that is, the lane in which the Baggett truck was supposed to move. He found the automobile about twenty-seven feet from the point of impact on the western side of the highway.

Zelvis testified that he was riding in the back seat of the McElroy automobile at the time of the collision; that he had been asleep but had awakened just prior to the impact and saw "headlights coming towards

us" but he would not say on which side of the road the collision occurred. Zelvis, as shown above, also testified that McElroy was driving the car at the time of the collision.

McElroy testified that he was asleep on the front seat of his automobile next to the driver Zemczonek at the time the two vehicles collided and that he had no knowledge of how the accident occurred.

Pierson, Baggett's driver, testified that the truck was in good mechanical repair in all respects prior to the accident; that because of the bad weather conditions and traffic he was driving the truck in a "gear" which would not permit it to travel at a speed in excess of forty miles an hour and that the truck was moving in the eastern traffic lane as it approached the scene of the accident at a speed which he estimated at between thirty and thirty-five miles an hour, with the headlights dimmed; that he saw the headlights of the McElroy automobile for a distance equal to two or three city blocks and that the automobile was moving southwardly in the western lane of travel at a speed of between fifty and sixty miles an hour; that just prior to the collision the automobile turned sharply to its left so that it was headed in an easterly direction moving across the highway; that when he saw the automobile make the turn he applied the brakes to the truck and pulled it to the right to the extent that the right front wheels of the truck were off the eastern edge of the highway at the time of the impact; that the left side of the front part of the truck hit the right side of the automobile in front near the door handle; that as a result of the impact the automobile was knocked or pushed off the western side of the highway; that as a result of the collision the left fender of the truck was pushed down between the truck frame and the wheel to such an extent that the truck could not be steered and the air line to the left front wheel was broken, which resulted in the vehicle being without any brakes; that because of such damage the truck did not come to rest until it had travelled some 135 feet to a point on the western side of the highway.

R. C. Thompson testified in substance that shortly prior to the collision he was riding in his automobile in a southerly direction a few hundred yards behind the McElroy car, which was moving at a speed of around fifty miles an hour. He stated that he could see the lights of the McElroy car and that it appeared to be moving in its proper lane of travel, that is, on the western side of the road until "this truck come out across the road and I never saw the lights no more—I couldn't see after the truck got across the road." Mrs. Thompson's testimony was to the same effect.

◼ The appellant contends that the trial court erred in giving the general affirmative charge in favor of the defendant Baggett Transportation Company as to the wanton count. We cannot agree. In our opinion the only testimony which tends to fix the responsibility for the collision on Baggett is that of the Thompsons and, at best, their testimony shows simple negligence on the part of Baggett's driver. Because of the testimony of the Thompsons we are of the opinion that the trial court did not err in refusing the general affirmative charge requested by Baggett as to the negligence count. However, in our opinion the evidence does not support an inference of wanton conduct, that is, that Baggett's driver, with reckless indifference of the consequences consciously and intentionally did some wrongful act or omitted some duty which produced the death of plaintiff's minor son. These essential elements of wantonness were at best left to conjecture, pure and simple. Smith v. Roland, 243 Ala. 400, 10 So.2d 367; Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505.

◼ Given Charge 19 predicates a finding of no liability for either defendant on the hypothesis that "plaintiff's intestate" was guilty of negligence proximately contributing to his injury and death. We have said that it is reversible error to give such a charge where there is a wanton count which has been properly submitted to the jury, since contributory negligence is no defense to such a charge. Crocker v. Lee, 261 Ala. 439, 74 So.2d 429; Sims v. Birmingham Electric Co., 238 Ala. 83, 189 So.

547. As previously shown, the trial court permitted the wanton count to go to the jury as to the defendant McElroy.

◼ A charge on contributory negligence in an action of this kind is erroneous which fails to hypothesize that the negligence asserted as a bar to recovery by the plaintiff proximately contributed to his injury. Such negligence in order to defeat recovery under a plea of contributory negligence must be a concurring proximate cause of the injury and not merely a remote or antecedent cause or condition. Terry v. Nelms, 256 Ala. 291, 54 So.2d 282, and cases cited. Given Charge 20 violates this rule in omitting the word "proximately" and the holding of this court is that when a charge is so fatally omissive, its giving, where there is a jury question presented, is error to reverse. Crocker v. Lee, supra.

To avert a reversal because of the giving of Charges 19 and 20, it is argued in brief filed here on behalf of appellees that the defendant McElroy, the only defendant to whom these charges have direct application, was entitled to the general affirmative charge as to both counts of the complaint and that, therefore, the giving of the charges was error without injury. Birmingham Ice & Cold Storage Co. v. Alley, 247 Ala. 503, 25 So.2d 37; Lambert v. Southern Ry. Co., 214 Ala. 438, 108 So. 255; Beavers v. Southern Ry. Co., 212 Ala. 600, 103 So. 887.

As to the first count of the complaint, we are clear to the conclusion that the evidence which we have heretofore set out, when viewed in the light most favorable to the plaintiff, presented a question for jury determination as to whether or not the defendant McElroy was guilty of negligence which proximately contributed to or caused the death of plaintiff's minor son. Although there was a conflict in the evidence as to who was driving the McElroy car at the time of the collision, we are not here concerned with the weight of the evidence. It was amply sufficient to justify a finding that McElroy was the driver at the time the two vehicles collided.

◼ Under our recent case of Wagnon v. Patterson, 260 Ala. 297, 70 So.2d 244, and

the cases there cited and quoted frcm, the evidence presented a question for jury decision as to whether Zemczonek was a paying passenger so as to authorize a recovery on a count charging simple negligence in view of our guest statute. § 95, Title 36, Code 1940. We do not think that this question was one of law for the court in this particular case for the reason that although Zelvis was positive that such an arrangement had been made prior to the time the trip to Ohio was taken, and although McElroy so indicated on his direct examination, nevertheless the fact remains that on cross examination McElroy apparently sought to limit or restrict his testimony on direct examination to considerable extent. The jury had the right to determine which of the statements made by McElroy it would believe. Alabama Power Co. v. Buck, 250 Ala. 618, 35 So.2d 355.

■ We hold, therefore, that the defendant McElroy was not entitled to the general affirmative charge as to Count 1 and that hence the trial court erred in giving at his request written Charge 20.

We are of the opinion that under the evidence in this case, when viewed in the light most favorable to the plaintiff, a question for the jury was presented as to whether or not McElroy was guilty of wanton conduct. As shown above, there was evidence going to show that he was the driver of his automobile. The fact that he was driving at a speed of nearly sixty miles an hour in the darkness in a driving rain, without having had any sleep for nearly twenty-four hours except such as he might have had while one of the other occupants of the car drove, was sufficient, we think, to make a jury question under the wanton count.

We hold, therefore, that the trial court erred in giving Charge 19.

■ Given Charge 21 could have been refused without error on the ground that it tends to give undue emphasis to one phase of the evidence. Birmingham Electric Co. v. Perkins, 249 Ala. 426, 31 So.2d 640. However, the giving of the charge in

and of itself would not be sufficient to require a reversal of the cause.

■ Under the pleading and evidence in this case, the jury could have found in favor of one of the defendants and against the other. F. W. Woolworth Co. v. Erickson, 221 Ala. 5, 127 So. 534; § 139, Title 7, Code 1940. Hence, the appellant contends that the trial court erred to a reversal in giving written Charge 13, contending that under that charge the jury was instructed that before the plaintiff could recover he had to prove to the reasonable satisfaction of the jury the liability of both defendants. We think this charge might well have been refused on the ground that it has a tendency to mislead, but again we do not feel that we would be justified in reversing the cause merely for the giving of this charge, for the plaintiff could have requested an explanatory instruction.

We have held above that the trial court erred to a reversal in the giving of written Charges 19 and 20. Charge 19 was not injurious in so far as Baggett was concerned for the reason that the general affirmative charge as to the wanton count had already been given in its favor and Charge 20 was framed to affect only the defendant McElroy.

■ We have held that when a decision on a case as to one appellee is not affected by the decision as to the other, a joint judgment may be reversed as to one appellee and affirmed as to the other. Young v. Woodward Iron Co., 216 Ala. 330, 113 So. 223; Sovereign Camp, W. O. W. v. Davis, 242 Ala. 235, 5 So.2d 480. However, we are of the opinion that in the instant case the ends of justice will be best subserved by the reversal and vacation of the judgment in its entirety so that the cause may be retried. Luquire Ins. Co. v. Parker, 241 Ala. 621, 4 So.2d 259; St. Paul Fire & Marine Ins. Co. v. Johnson, 256 Ala. 690, 57 So.2d 80.

The judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.

SIMPSON, GOODWYN and MERRILL, JJ., concur.