170 So.2d 796

**Fred HALL, Jr.,**

**v.**

**DEXTER GAS COMPANY, Inc., et al.**

**3 Div. 39.**

Supreme Court of Alabama.

Sept. 3, 1964.

Rehearing Denied Jan. 21, 1965.

Warren S. Reese, Jr., Montgomery, for appellant.

Rushton, Stakely & Johnston, Montgomery, for appellees.

**362**

LAWSON, Justice.

This suit was brought in the Circuit Court of Montgomery County by Fred Hall, Jr., against Dexter Gas Company, Inc., and Dexter Service Company, Inc., to recover damages for personal injuries alleged to have been sustained by Hall as a result of the negligence of the defendants' servants, agents or employees in filling a liquified gas tank on Hall's premises.

After their demurrer to the complaint was overruled, the defendants pleaded the general issue in short by consent in the usual form.

At the conclusion of the evidence the trial court gave an affirmative instruction in favor of the defendant Dexter Gas Company, which that company had duly requested in writing.

The jury later returned a verdict in favor of the other defendant, Dexter Service Company. Judgment followed the verdict. The plaintiff, Hall, filed a motion for a new trial. It was denied. The plaintiff has appealed to this court.

Submission here was on a motion to dismiss the appeal and on the merits.

### Motion to Dismiss Appeal

One of the grounds of the motion to dismiss takes the point that "the transcript does not contain a certificate that appellant has served appellees or their attorneys with a copy of the assignment of errors." It is not alleged in the motion to dismiss that the assignments of error were not actually served upon counsel for movants or upon movants. The brief filed on behalf of appellant, plaintiff below, which was apparently duly served on counsel for movant, appellee, contains a copy of the assignments of error. The certificate provided for in Supreme Court Rule 1, Code 1940, Title 7, Appendix, is not jurisdictional. Edge v. Bice, 263 Ala. 273, 82 So. 2d 252; Land v. Craig, 271 Ala. 580, 126 So.2d 221. Under the circumstances of this case, we do not think the absence of the certificate should work a dismissal of the appeal. Edge v. Bice, supra; Land v. Craig, supra. Cf. Board of Education of Colbert County v. Mitchell, 270 Ala. 594, 121 So.2d 103; Department of Industrial Relations v. Simms, 39 Ala.App. 525, 104 So.2d 782, where copies of the assignments of error were not served on appellees or their counsel. The holdings in those cases were not based on the mere absence of the certificate of service.

The other ground of the motion to dismiss takes the point that appellant's brief does not meet the requirements of Supreme Court Rule 9, which prescribes the form and contents of briefs filed in this court by appellants. While the brief filed here on behalf of the appellant might not strictly conform to the aforementioned rule in all respects, we do not feel that the omissions from or defects in the brief warrant us in disregarding it.—Simmons v. Cochran, 252 Ala. 461, 41 So.2d 579; City of Boaz v. Kelley, 266 Ala. 690, 99 So.2d 192; Barrett v. Hanks, 275 Ala. 383, 155 So.2d 339.

The motion to dismiss is denied.

## On the Merits

The appellant asserts that the trial court erred in requiring him to strike from a jury list containing only twenty-three names. The record contains the following entry:

"THE COURT: Mr. Reporter, let the Record show that when the case was ready for trial it turned out that there were only twenty-three jurors in Court and counsel for the plaintiff insisted that there be twenty-four jurors. Wherepon, counsel for the defendant said there would be eleven strikes left and that they would give the plaintiff six strikes and they would take five and the Court being of the opinion that if there was another juror the only other strike there would be, would be six, and he is getting six and that the motion to summons another juror is denied, and the plaintiff duly and legally excepts thereto."

Section 54, Title 30, Code 1940, reads:

"In all civil actions triable by jury, either party may demand a struck jury, and must thereupon be furnished by the clerk with a list of twenty-four jurors in attendance upon the court, from which a jury must be obtained by the parties or their attorneys alternately striking one from the list until twelve are stricken off, the party demanding the jury commencing; provided, that in all judicial circuits having not more than two judges, the court shall require to be made two lists of all the jurors in attendance upon the court, who are competent to try the case, and not engaged in the trial of some other case, which list shall in no event contain less than twenty-four jurors, from which a jury must be obtained by the parties or their attorneys alternately striking one from the list until only twelve remain on the list, the party demanding the jury commencing; and the jury thus obtained must not be challenged for any cause, except bias or interest as to the particular case."

In Rosenbush Feed Co. v. Garrison, 251 Ala. 245, 37 So.2d 106, we observed that the parties in a civil case cannot be required to strike from a list which does not contain the names of twenty-four competent jurors. To like effect see Southern R. Co. v. Milan, 240 Ala. 333, 199 So. 711; Morris v. McClellan, 169 Ala. 90, 53 So. 155; Woody v. Chandler, 37 Ala.App. 238, 66 So.2d 463. In Birmingham Union St. Ry. Co. v. Ralph, 92 Ala. 273, 9 So. 222, we said:

"* * * The right to a struck jury, upon the demand of either party, is clearly secured by statute. If there should be a less number in attendance than 24, it is the duty of the court to complete the list of competent and qualified persons to 24, before the process of rejection or striking off should commence. [Kansas City] Railroad Co. v. Smith, 8 [Vol.] South Rep. [p.] 43. (This case is reported in 90 Ala. 25, but no facts are stated to show the application of the principle. These are stated in the Southern Reporter.) Or if there should be 24 in attendance, and from any cause the number is reduced to less than 24, the panel should be filled up to 24, from which list the jury should be struck. If the regular jurors in attendance upon the court should exceed 24, the panel of 24 should be completed from the regular jurors. * * *" (92 Ala. 276, 9 So. 222)

True, as the trial court pointed out, the plaintiff had the same number of strikes, six, as he would have had if the list had contained twenty-four rather than twenty-three names. But the twenty-fourth prospective juror might have changed the entire course of striking, resulting in an entirely different trial jury. We cannot apply here the doctrine of error without injury and thereby completely ignore the mandatory provisions of the statute. The situation here is entirely different from that presented in Rosenbush Feed Co. v. Garrison, supra, where we held that the record af-

firmatively showed that there was no injury to appellee and the list of jurors from which the jury was obtained contained the names of more than twenty-four competent jurors. The Rosenbush case was tried in the Sixth Judicial Circuit. Tuscaloosa County was the only county in that circuit. At the time, the Sixth Judicial Circuit did not have more than two circuit judges.

The appellant complains of the action of the trial court in giving the affirmative charge without hypothesis in favor of the defendant Dexter Gas Company, Inc.

■ Dexter Gas Company seems to be engaged in the business of selling, distributing, storing and transporting a liquified petroleum gas called propane, which is admittedly a dangerous commodity. While perhaps not a public utility as that term is defined in § 302, Title 48, Code 1940, as amended (Report of Attorney General, April-June 1943, p. 79), Dexter Gas Company is subject to the provisions of the Alabama Liquified Petroleum Gas Act.— Act 275, approved July 26, 1951, Acts of Alabama, 1951, p. 559. That act is carried in the supplement to the Code of 1940 as Title 26, § 179(57) et seq.

■ Those dealing with dangerous commodities such as liquified petroleum gas must use a degree of care commensurate with the dangers involved.

■ Although Dexter Gas Company is not a public utility, the legislature of this state has recognized the dangerous propensities of liquified petroleum gas by the enactment of Act 275, supra. The undertaking by a supplier of liquified petroleum gas to furnish its product to the tanks of its customers calls for the same degree of care required of public utilities generally in their service to the public.

■ We have said that this degree of care may be defined to be the same degree of care and vigilance which persons of skill and prudence observe under like conditions. Dealing with matters requiring expert knowledge in that line of business implies a duty to have such knowledge and the obligation to act in the light of such knowledge. In matters involving the safety of human life, such care and vigilance must be exercised as a due regard for the sacredness of human life demands. Alabama Utilities Service Co. v. Hammonds, 225 Ala. 657, 144 So. 822.

■ When the testimony is viewed in the light most favorable to the appellant, plaintiff below, as it must be when we review the action of a trial court in giving an affirmative instruction in favor of a defendant, we are of the opinion that a jury question was presented as to whether Dexter Gas Company's employee negligently breached the duty which Dexter Gas Company owed the plaintiff below which proximately caused the injuries which plaintiff suffered. Hence, we hold that the trial court erred in giving the affirmative charge without hypothesis in favor of Dexter Gas Company.

The evidence viewed in the light most favorable to plaintiff is as hereafter summarized.

On the morning of January 20, 1961, a call was made by plaintiff's wife to Howard K. Gardner, vice-president and general manager of Dexter Gas Company, wherein a request was made for the filling of the Halls' propane gas tank. In response to that call one Clarence L. Norris, an employee of Dexter Gas Company, was dispatched to the Hall residence where he proceeded to fill the propane gas tank. The propane gas entered the tank through a hose on the truck which was connected with the filler valve on the tank. It took Norris almost an hour to complete his assignment, although it usually required only about fifteen to twenty minutes to fill the tank. While Norris was engaged in the filling of the tank Mrs. Hall, plaintiff's wife, heard a "banging" noise. Just before leaving the Halls' premises, Norris told Mrs. Hall that he had trouble filling the tank, hence the delay. The evidence

does not show that Norris advised Mrs. Hall that the tank was unsafe.

The plaintiff was away from home while the tank was being filled, but he arrived at his house a few minutes thereafter. He went to the tank for the purpose of checking the gauges. Plaintiff raised the hood which covered the filler valve. He testified that as soon as he raised the hood "gas got in my face." It came from the filler valve. That plaintiff was painfully and seriously injured is without dispute.

Under the evidence as we view it, the jury could have found that Dexter Gas Company's employee, Norris, failed to seat the filler valve so as to prevent the liquified petroleum gas from escaping from the tank, or to notify the Halls of such failure. And we think it clear that such was his duty to the plaintiff in view of the dangerous character of the commodity which had been pumped into plaintiff's tank.

We are of the opinion that the trial court could have given without error the general affirmative charge in favor of the defendant Dexter Service Company, Inc., but apparently no such charge was requested. There is not a scintilla of evidence tending to show that any servant, agent or employee of Dexter Service Company had any connection with the filling of the plaintiff's propane gas tank. The transcript of the evidence is completely devoid of any reference to Dexter Service Company.

█ The defendants introduced into evidence a so-called tachograph disc record or chart. The testimony does not clearly disclose what a tachograph is or exactly how it works. As we understand the testimony of Howard K. Gardner, the vice-president and general manager of Dexter Gas Company, a tachograph is similar to a clock. It is put in a truck in place of a speedometer. It runs continuously. A disc or chart is placed in or connected with the tachograph instrument so that it "tells the time that the truck started and the number of miles he goes and the stops that he makes and what he is doing at the stop and how long he stays in that place and when he starts up on the next run and the speed which he operates during the day and when he comes in the total miles for the day and the number of stops he made and so forth." According to Gardner the tachograph chart enables him to know exactly what his truck driver or service man is doing "minute by minute during the day."

The objection interposed to the introduction of the tachograph disc record or chart was that, "It is not properly verified or authenticated." We do not think that objection well taken. Gardner testified that the record or chart was kept in the ordinary course of his business as a part of the general records under his supervision. In view of Gardner's testimony, the introduction in evidence of the tachograph record or chart was not subject to the objection interposed.—§ 415, Title 7, Code 1940.

The other argued assignments of error relate to rulings on the admission and exclusion of evidence which, in all probability, will not occur on another trial and, hence, need not be treated here.

For the errors indicated, the judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.

On Rehearing

LAWSON, Justice.

In our opinion on original deliverance we said by way of obiter dictum that Dexter Service Company would have been entitled to the general affirmative charge if such a charge had been requested, in that the record contained not even a scintilla of

evidence tending to show that any servant, agent or employee of that company had any connection with the filling of the plaintiff's propane gas tank.

Because of that statement counsel for appellees now insist that we should modify our judgment of reversal so as not to affect the judgment of the trial court in favor of appellee Dexter Service Company. Our opinion on original deliverance is not questioned in so far as it results in a reversal of the judgment of the trial court in favor of appellee Dexter Gas Company.

■ We have said that when a decision in a case as to one appellee is not affected by the decision as to the other, a joint judgment may be reversed as to one appellee without disturbing the judgment as to the other. Young v. Woodward Iron Co., 216 Ala. 330, 113 So. 223; Zemczonek v. McElroy, 264 Ala. 258, 86 So.2d 824.

■ But we have reexamined the record in this case and are constrained to observe that we were wrong in saying that there was no evidence to connect Dexter Service Company with the transaction out of which plaintiff Hall sustained his injury. We overlooked a sales slip which was introduced in evidence by the defendants below, appellees, which shows that propane gas was sold to plaintiff by Dexter Service Company on January 20, 1961, the day on which Hall alleged in his complaint that he sustained the injury. This is at least a scintilla of evidence which connects Dexter Service Company with the filling of plaintiff's gas tank on the day the injury is alleged to have occurred. Hence, the trial court would not have committed error in refusing an affirmative instruction in favor of Dexter Service Company if such a request had been made.

Opinion extended and application for rehearing overruled.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.