212 So.2d 695

**McArthur HARRIS**

v.

**STATE.**

4 Div. 638.

Court of Appeals of Alabama.

March 5, 1968.

Rehearing Denied May 21, 1968.

**450**

The State's proof tended thus: December 6, 1966, Harris and others drove up to a store in Eufaula. Harris and Bowman walked in and after picking out some merchandise pulled a pistol on the clerk in charge, Gerald Bennett, and ordered him into a cooler. The cash register was left open.

Two minutes later a juvenile customer came in the store. Bennett seemingly concluded that the defendant had gone. When Bennett came out, "there was—from what I could notice—a few pennies and just scattered small change." Bennett recalled "certain money" having been in the register before his being forced into the cooler. Mr. Childree, the manager, came and "inventoried" the cash register.

First, appellant challenges the constitutional validity of Code 1940, T. 15, § 237,[1] and as to the omission in the accusation of the time (and place) of the alleged offense.

Second, we are asked to review several rulings below allowing, over objection, Childree to testify as to his inventorying the cash register after the robbery. The questions culminated in an answer that the till was $119.50 short.

Third, a prosecution witness, Elizabeth Ballard, appellant's female companion, had a poor memory as to exact date of Harris's robbing Bennett. During her testimony, several objectons were overruled:

"Q   What happened in Eufaula?

"*MR. SIMPSON:* Object to any testimony as to what happened in Eufaula unless it is shown what day it happened on.

"*COURT:* See if you can get the date a little bit closer.

"*MR. LeMAISTRE:* I don't think she knows the date, Your Honor, but I will ask her.

Albert F. Simpson, Eufaula, for appellant.

MacDonald Gallion, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

CATES, Judge.

Indictment, robbery; verdict, guilty; sentence, fifteen years in the penitentiary. This is a companion case to Bowman v. State, ante p. 331, 208 So.2d 241 (1968).

1.  "§ 237.  It is not necessary to state the precise time at which the offense was committed; but it may be alleged to have been committed on any day before the finding of the indictment, or generally before the finding of the indictment, unless time is a material ingredient of the offense."

"Q  Did you ever come through Eufaula more than once with him?

"A  I don't know.

"Q  You know whether you did or you didn't. Did you ever come to Eufaula more than one time with Johnny and—

"A  No sir this is my first time being in Eufaula.

"Q  That was the time you came with—

"MR. SIMPSON: If it pleases Your Honor the Solicitor is leading his witness.

"MR. LeMAISTRE: You didn't give me much time to lead. I hadn't even started the question good.

"COURT: State your question.

"Q  The one time you talk about was the time that you were with Johnny Bowman and McArthur Harris and what is the other one?

"A  Margaret Ann Bowman.

"Q  Is it or is it not?

"MR. SIMPSON: Elizabeth, when I start to object you wait until I get through. I object now on the grounds that the Solicitor is leading the witness, Your Honor, and further that she is answering in the middle of his questions which makes it extremely difficult for me to get in an objection before her answer and I wish you would admonish her not to do that.

"COURT: Wait until the question is asked then if he objects to it wait until I say something before you answer. I might tell you not to answer and I might tell you to answer. So, if he says anything right after he asked you a question you just be quiet. I overrule your objection on this.

"Q  Was that the time that you talk about is all I am asking you. Was that the time you came to Eufaula?

"A  Yes sir.

"Q  Was that in December of 1966?

"A  I know it was in '66 but I don't know what date.

"Q  Did anything happen in Eufaula?

"MR. SIMPSON: Your Honor, object to this question on the grounds that the witness has testified she doesn't know when she was here and I don't believe we are put to the burden of defending against any time she may have happened to have been in town. We are talking about one day.

"COURT: Overrule.

"MR. SIMPSON: Like an exception.

"Q  Do you know the Quik Mart store in Eufaula when you see it?

"A  Do I know it when I see it. Yes sir I know it when I see it. I know the store we went to.

"Q  Did you and McArthur Harris and Johnny Bowman and the other girl stop at the Qwik Mart store?

"MR. SIMPSON: Object on the grounds it is not shown when they stopped at the Qwik Mart store.

"COURT: Overrule. You can answer the question. Did you all stop at the Qwik Mart store?

"A  Yes sir we stopped there at the store because they asked us what we wanted to eat.

"MR. SIMPSON: Just answer what Mr. LeMaistre asked you.

"A  Yes sir we stopped at the store."

Fourth and Fifth, appellant raises the same specification as to the lack of connection in point of time as to appellant's actions as described by this witness.

Sixth, appellant argues that since the victim could not see the cash register, the proof of money being taken came only from insufficient circumstantial evidence (see Second) the State failed to establish asportation a necessary ingredient of robbery.

Seventh, error is claimed to reside in sustaining the District Attorney's argument, objection to which was made thus:

"*MR. SIMPSON:* We object to the statement of the District Attorney in closing that the defendant proceed to clean out the cash register on the grounds that there is no testimony which shows that this defendant proceeded to clean out the cash register nor is there any testimony from which an infrance [sic] to that effect could be drawn.

"*COURT:* Overrule."

Eighth, appellant orally requested that the trial judge charge the jury as to lesser offenses (though without specification).

Ninth, a claim of error is laid in the undisputed evidence that title to the money taken was not in the victim.

### I.

Title 15, § 237, supra, and § 259, Form No. 95,[2] represent statutory compression doing away with cases such as State v. Beckwith, 1 Stew. 318, and Roberts v. State, 19 Ala. 526.

Form 95, the Code annotation notes, has been expressly approved at least twice by our Supreme Court in Thomas v. State, 91 Ala. 34, 9 So. 81, and Toliver v. State, 142 Ala. 3, 38 So. 801. In the opinions, these glosses are cryptic.

The appellant here complains that the reversal upheld in Gayden v. State, 262 Ala. 468, 80 So.2d 501, requires us to declare Form 95 to be violative of the due process clause of the Fourteenth Amendment and § 6 of the Alabama Constitution.

Since Mr. Justice Lawson, in *Gayden,* supra, did not concur in the opinion of Mr. Justice Simpson but only in the result, the effect of the Supreme Court's affirmance was to adopt Judge Carr's opinion in this court.[3] See Wheat v. State, 281 Ala. 287, 202 So.2d 73; Irwin v. State, 23 Ala.App. 284, 124 So. 408; Curry v. State, 25 Ala.App. 317, 146 So. 81; Willis v. Buchman, 30 Ala.App. 33, 199 So. 886 (after remandment).

However, we are clear to the conclusion that here we are not controlled by the *Gayden* opinions nor by the principle relied on to vitiate certain short form indictments in State v. Straughan, 229 La. 1036, 87 So.2d 523.

Time is not a material ingredient in a charge of robbery. Cf. Shiflett v. State, 37 Ala.App. 300, 67 So.2d 284. Place is not a question of criminal pleading but proof.[4] Code 1940, T. 15, § 238; Circuit Court Rule 35; Payne v. State, 40 Ala.App. 493, 115 So.2d 670.

Obedience to the statutory directions to leave out of an indictment for robbery any detail of time other than "before the finding of this indictment"[5] does not deny the accused due process of law. Caldwell v. State of Texas, 137 U.S. 692, 11 S.Ct. 224, 34 L.Ed. 816.

### II.

Larceny enforced by violence or threats is robbery. However, it is without degrees based on value: there is no petty robbery. In Wilson v. State, 268 Ala. 86,

---

2. "95. Robbery. A. B. feloniously took a gold watch, of the value of * * * dollars, the property of C. D., from his person, and against his will, by violence to his person, or by putting him in such fear as unwillingly to part with the same."

3. *Gayden,* supra. In Mitchell v. State, 41 Ala.App. 254, 130 So.2d 198, we noted: "Since there is no conflict between the opinions of Mr. Justice Simpson and that of Judge Carr, the concurrence of four justices of the Supreme Court in the affirmance of the Court of Appeals manifests approval of this court's opin-

ion (aside from dicta) as the law of the case. This in turn requires our adherence to Judge Carr's opinion under statutory stare decisis per § 95, supra."

4. Thompson v. State, 106 Ala. 67, 17 So. 512: "* * * Time and place are material inquiries on every criminal trial. The burden rests on the State to prove that the offense charged was committed within the county in which the *venue* is laid, and within a time to avoid the bar of the statute of limitations. * * *"

5. See Code 1940, T. 15, § 259, Form No. 1; T. 15, § 237.

105 So.2d 66, it was pointed out that in robbery the amount of money taken is immaterial.

██ Viewed from this rule, the testimony of Bennett that "certain money" had been in the till, coupled with the circumstance of there being a trifling amount afterwards, made out a prima facie proof of value being taken. Thus, even if we were to consider that the trial court erred in receiving Childree's evidence as to his "inventorying" the cash register, nevertheless Supreme Court Rule 45 would keep us from treating it as reversible. Therefore, from the appellate point of view the question is academic.

In this connection, though the State did not prove the precise moment of asportation, we consider that the entire "two minutes" during which Bennett was away from tht cash register accorded the defendant or Bowman an opportunity to get the money.[6] Certainly the threats preceded the disappearance of the money. See Cobern v. State, 273 Ala. 547, 142 So.2d 869 (hns. 2 and 4).

We hold that the State established a prima facie case of the taking of something of value to meet the allegation.

### III., IV., and V.

██ The testimony of Elizabeth Ballard quoted above reveals no ground of error in the court's ruling. McElroy, Evid. (2d Ed.), § 115.01(1)—"The law does not require absolute or positive knowledge or perfect recollection in a witness."

### VI.

See II above.

### VII.

██ Sometimes it is claimed that it is impermissible to rest one inference upon another. Contra: McElroy, Evid. (2d Ed.),

§ 21.01(9). However, the above quoted objection to the District Attorney's argument was not well taken, even though Bennett was not an eyewitness to the taking of the money. See II above, particularly footnote 6 as to Elizabeth Ballard's testimony as to Bowman having "the money."

### VIII.

██ We find no request in writing for a charge as to the indictment including any lesser offenses. Code 1940, T. 7, § 273, precludes us from reviewing a motion for a charge which is presented only orally to the judge.

### IX.

██ Title to property taken is not required to be alleged and proved in robbery. Ownership, which may be special property, is enough if the object is taken from the person of the victim. Montgomery v. State 169 Ala. 12, 53 So. 991, where the opinion refers to "undisputed possession and control of the property." Riggens v. State, Ala.App., 207 So.2d 141 (Ms., Jan. 16, 1968). Cf. Hill v. State, 145 Ala. 58, 40 So. 654, and Thomas v. State, 91 Ala. 34, 9 So. 81.

### X.

The judgment below is due to be

Affirmed.

### On Rehearing

CATES, Judge.

At appellant's request we set forth the indictment (omitting the caption, district attorney's signature, the foreman's and circuit clerk's endorsements):

"The Grand Jury of said County charge that, before the finding of this indictment, McArthur Harris, whose name is to the Grand Jury otherwise unknown, feloniously took one twenty dollar bill in currency of the United States, five

---

**6.** Elizabeth Ballard testified that after leaving the store Bowman took "the money" out of his coat pocket, put it in a bag, and put the bag in "the car pocket." (R. 213.)

five dollar bills in currency of the United States, forty-five one dollar bills in currency of the United States, all of the aggregate value of ninety dollars, the property of Gerald Bennett, from his person, and against his will by violence to his person or by putting him in such fear as unwillingly to part with the same, against the peace and dignity of the State of Alabama."

True, as Harris points out in brief, "no one testified to seeing Defendant take any money and * * * Gerald Bennett could not see the cash register while in the cooler."

However, Bennett clearly testified that defendant ordered him to get in the cooler. The only other person who had an opportunity to take money from the cash register was "a little boy that came in the door."

Even this possibility (of the boy's taking the money) we view as remote. It is reasonably inferable from the evidence that Bennett came out of the cooler as soon as the boy came in the store. Thus, though Bennett was unable to see the cash register while in the cooler, since Harris had pulled a gun on Bennett and ordered him to get to the back away from the cash register, the jury was entitled to find that Harris wanted money from the cash register.

Further, we excerpt from Bennett's direct examination:

"Q Now, with particular to any money, what money, had there been some money in the cash register?

"A Yes sir.

"Q How did you find your cash register?

"A Well, I left it open when I went to the back.

"Q When you came back how did you find it?

"A When I came back there was only from what I could notice a few pennies and just scattered small change.

"Q Could you determine how much money was taken in, particular denominations, to the best of your ability?

"A Well, I know of some certain money that was in the drawer. A roll of dimes, two rolls of pennies, that I had put in there, well, within 15 minutes before.

"Q What about any bills?

"A There was some one dollar bills and I am sure there was some five dollar bills in there and as far as larger bills I really wouldn't know.

"Q What about one twenty dollar bill. Do you know whether or not it could have been one in there?

"A Well, it probably could have been. I don't know about that.

"Q Now, how much was left in your cash drawer?

"A Well, now, the Manager checked. Mr. Childree checked the register but I know there was 175 left in the drawer.

"Q You were present there when the counting was made?

"A There was—the way the report is made he had to check it out himself.

"Q Prior to your having been held up you testified that you just testified as to what amounts of coins or currency was in the cash register?

"A yes sir.

"Q You are sure that is correct?

"A Yes sir."

This we consider to show that "something of value" was taken from Bennett's cash register.

In brief on application for rehearing, appellant states in part:

"Appellant submits that, *without* Childree's testimony as to inventory, there is no clear testimony that any money was taken. Your Honors noted in your opin-

ion herein on 5 March 'the testimony of Bennett that "certain money" had been in the till, coupled with the circumstance of there being a trifling amount afterwards, made out a prima facie proof a value being taken.' We disagree. The technical question, however, is only part of the matter. This was a jury case and it is altogether probable that a jury may not have been convinced 'beyond a reasonable doubt and to a moral certainty' on the shaky testimony capsuled above that any money was actually asported. A substantial, justified, and saving doubt may well have arisen in the mind of one or more jurors as to an actual taking. But once the Court erroneously allowed Childree to state that he checked out the till and found One Hundred Nineteen Dollars missing, no juror, receiving as he must the evidence allowed in by the Court, was likely to doubt an asportation."

At the conclusion of the defense's cross-examination of Childree, we note the following:

"Q When you state that $119.00 or something was short that is based entirely upon an assumption that there was a correct tape in the machine?

"A Yes sir.

"Q A tape which you had not run since 3 o'clock?

"A That is true.

"Q A tape upon which there had been other transactions when you left?

"A Yes sir.

"Q So if the tape was in error, which is something you wouldn't know, then, you wouldn't know, then, you would be wrong about how much was short wouldn't you? If the tape was wrong your statement would be wrong?

"A Well—

"Q Answer my question. Isn't that correct?

"A Yes sir.

"Q That was my question?

"A Previous times it being right before and since. I will put it like that.

"Q That has nothing to do with this case. I am not accusing you or anybody else of keeping a false tape, understand that?

"A That is right.

"Q But I do say that your entire testimony as to how much money was taken is based upon an assumption of correct tape which is something you don't know. Isn't that correct?

"A All I can go by—

"Q No sir, answer my question.

"A All I can go by is what that machine shows.

"Q Let me state it again so your testimony as to how much money was taken, if any, is based entirely upon an assumption that there was a correct tape in the machine which is something you don't know. Isn't that true?

"A That is true.

"Q Yes sir, that is true.

"MR. SIMPSON: Your Honor, the defendant moves Your Honor to exclude all of the testimony of the witness Childree, as to how much, if any, money was short in the machine.

"MR. REEVES: Your Honor, I think he can testify which I am just going to ask him, give him a chance before you rule as to how much money he left in the cash register at 3 o'clock when he went off duty and then what he found in the cash register when he made an inventory at approximately 6:10 that night.

"MR. SIMPSON: Your Honor, my friend the District Attorney has already brought out those points and the defendant's point is that the testimony of this witness that the money or any money

being short on that cash register is based entirely upon the assumption of the correctness of a tape which he himself has testified he doesn't know and we move Your Honor to exclude his testimony to strike it from the record and instruct the jury that they cannot consider that.

"COURT: I am going to let his testimony stay in which gives the amount that he left there and the amount that he found on his return, then, I am going to leave in the tapes. Now, the jury can consider those tapes in the light of your very thorough cross examination. I am going to leave that part in and you have an exception to my ruling.

"MR. SIMPSON: Your Honor has confused me. I don't exactly understand what is in.

"COURT: I am not going to let him draw the conclusion that a certain amount of money was stolen because your cross examination shows that he really doesn't know that. *I will let his testimony stay in as to the amount he knows he left there, the amount he knows he found there and then as evidence of the amount for a jury to consider or not consider I will leave in his testimony showing the tape reading at the time he left and at the time he returned.*

"MR. SIMPSON: The defendant will object to Your Honor's ruling as to how much money Mr. Childree left at 3 o'clock, as to how much money he found some hours later when he inventoried the store and Your Honor's allowing in the tapes which were not run by this witness and as to whom, nobody has verified.

"COURT: I thought this witness said he did the tapes and he ran them.

"MR. SIMPSON: I am talking about tapes that were punched or put on the machine when he wasn't there.

"COURT: I am going to let that in." (Italics added.)

■ We conclude that the trial judge's ruling was correct. The cash register tapes are records of cash transactions within the meaning of the Business Record Act. Code 1940, T. 7, § 415.[7]

Hall v. Dexter Gas Co., 277 Ala. 360, 170 So.2d 796, involved personal injury from escaping propane gas. In the opinion we find:

"The defendants introduced into evidence a so-called tachograph disc record or chart. The testimony does not clearly disclose what a tachograph is or exactly how it works. As we understand the testimony of Howard K. Gardner, the vice-president and general manager of Dexter Gas Company, a tachograph is similar to a clock. It is put in a truck in place of a speedometer. It runs continuously. A disc or chart is placed in or connected with the tachograph instrument so that it 'tells the time that the truck started and the number of miles he goes and the stops that he makes and what he is doing at the stop and how long he stays in that place and when he starts up on the next run and the speed which he operates during the day and when he comes in the total miles for the day and the number of stops he made and so forth.' According to Gardner the tachograph chart enables him to know exactly what his truck driver or service man is

7. "§ 415. Any writing or record, whether in the form of any entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible in evidence in proof of said act, transaction, or event, if it was made in the regular course of any business, and it was the regular course of the business to make such memorandum or record at the time of such act, transaction, occurrence, or event, or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility. The term, 'business' shall include business, profession, occupation, and calling of every kind."

doing 'minute by minute during the day.' "The objection interposed to the introduction of the tachograph disc record or chart was that, 'It is not properly verified or authenticated.' We do not think that objection well taken. Gardner testified that the record or chart was kept in the ordinary course of his business as a part of the general records under his supervision. In view of Gardner's testimony, the introduction in evidence of the tachograph record or chart was not subject to the objection interposed.— § 415, Title 7, Code 1940."

 Since § 415, supra, allows discrepancies to be confined generally to the weight rather than going to admissibility of business records, we hold the quoted direction by the trial judge in the hearing of the jury conformed to the statute.

As to other claims of error, we believe the opinion on original deliverance suffices to cover what we consider to be the aplicable law.

Application overruled.