JOSÉ R. RODRÍGUEZ ET AL., Plaintiffs and Appellants, *v.* SWIMPOOL SERVICE CO., INC., Defendant and Appellee.

No. R-68-187.     Decided April 2, 1969.

*R. Elfren Bernier* for appellants. *Martínez Muñoz, Agraít Oliveras & Otero* for appellee.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

PER CURIAM: The question raised herein is, in effect, whether appellee has rebutted the inference of negligence resulting from the application of the doctrine of *res ipsa loquitur* to the circumstances of this case, with evidence so convincing that a reasonable person could not draw such inference upon considering it. We conclude that notwithstanding the evidence produced by appellee, the inference subsists to the point of justifying the reversal of the judgment in this case. We discussed the nature and applicability of said doctrine in *Ramos* v. *Water Resources Authority*, 86 P.R.R.

572, 580–583 (1962), and reiterated it in *Community Partnership* v. *Pres. Hosp.*, 88 P.R.R. 379 (1963).

Since in this case none of the parties has sent to us the transcript of evidence, we must depend on the findings of fact of the trial judge. According to the latter:

"On November 17, 1968 [*sic*], Pascual Oliveras, defendant's employee, went to the piers in San Juan to pick up six cylinders of liquid chlorine which had been sent by boat by the vendor and bought by defendant, and when Oliveras received them he did not detect any defect in any of them and proceeded to transport them in his truck to defendant's business, where they would be used in the cleaning and maintenance of swimming pools; and when they were being unloaded from the truck he suddenly perceived the sound of an escape of gas and the odor of chlorine coming from one of the cylinders and he reported it to the wife of the owner of the business who instructed him to put it back on the truck immediately and take it to a distant place and throw it away; and Oliveras did so, immediately taking the cylinder and submerging it in a lake some distance from the scene of the accident.

"As a consequence of said escape of gas plaintiffs suffered damages to different plants on their property valued at $1,300, since plaintiffs' residence was situated across from defendant's business, both properties being separated by a road in Barrio Cupey Alto in Río Piedras.

"Plaintiff testified that he had on his property about 100 roosters, chickens, and hens and about 40 gamecocks, and fifteen of the latter, valued at $25 each, died, and he had to sacrifice some cocks because they became sick.

"That all the flower plants and vegetation were scorched and the grass looked as if a cylinder had passed over it.

"The area where defendant operates its swimming-pool service business and where it handles the chlorine-gas tanks is situated in an inhabited area of Barrio Cupey in Río Piedras, Puerto Rico.

"Defendant stores, in said place, the products it utilizes for its business including liquid chlorine bottled in cylinders.

"When the liquid chlorine escapes from a cylinder it passes into the atmosphere in the form of a gas.

"Chlorine gas, even in low degree of concentration, has prejudicial effects on life and vegetation is very sensitive to it.

"When the chlorine gas started to escape from the cylinder where it was kept defendant drove the truck transporting the cylinder through an inhabited area and across the road."

In the light of the facts, in dismissing the complaint the trial court said that:

". . . Said evidence, according to our law, creates only an inference of negligence under the doctrine of Res Ipsa Loquitur, which if not rebutted by defendant could create a cause of action in favor of plaintiff. The evidence showed that the escape of gas was not the result of any act of negligence on the part of defendant and that its actions were limited to bringing to its business a purchased cylinder manufactured by a third person, to be utilized in its swimming-pool service business and that it was not aware, when taking the cylinder there, that it had any defect whatsoever, and that suddenly the escape of gas appeared without it being caused by any action of defendant, and that immediately after it perceived the escape of gas it did what any prudent and reasonable man would have done under the same circumstances, it disposed of the cylinder in a distant place to prevent the contamination of the place."

Appellant alleges, in synthesis, that the trial court erred in applying the doctrine of *res ipsa loquitur*. We have not been placed in a condition to consider the other assignment based on the refusal of the court to make certain additional findings of fact, because of the lack of the transcript of evidence.

■ The trial court concluded that chlorine bottled in cylinders is a chemical product which upon escaping in gaseous form is injurious to life, and vegetation is very sensitive to its contact. Therefore, every person or enterprise utilizing it in said form must handle it with such degree of care commensurate with its dangerous qualities, including expert knowledge and the proper means to handle it and to prevent gas escaping from the container from causing injury to persons or property of others. *Wolff* v. *Buzzards Bay Gas*

*Co.,* 228 N.E.2d 94 (Mass. 1967); *Geismar* v. *General Gas Corporation,* 182 So.2d 769 (Ct. App. La. 1966); *Hall* v. *Dexter Gas Co.,* 170 So.2d 796 (Ala. 1965); *Metz* v. *Central Ill. Electric & Gas Co.,* 207 N.E.2d 305 (Ill. 1965).

■■ In *Metz, supra,* the evidence established that the explosion in a residence was due to gas escaping from the gas main. The court stated that since the gas main was under "the control or management of the party charged . . . and the occurrence is such as in the ordinary course of things would not have happened if the person so charged had used proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the party charged, that it arose from want of proper care . . . . This in essence is the doctrine of *res ipsa loquitur,* and its purpose is to allow proof of negligence by circumstantial evidence . . . . Like any other proof it may be explained or rebutted . . . the inference . . . does not simply vanish or disappear when contrary evidence appears, but remains to be considered with all the other evidence in the case . . . . In the ordinary course of things gas explosions will not occur. When one does occur, an inference of fault is justifiable. Even though the gas company may . . . be blameless, . . . in view of its superior knowledge of the facts . . . it has the duty to come forward and make explanation . . . . To rebut the inference of negligence, defendant offered evidence to the effect that once a year a visual inspection was made of the vegetation covering the gas mains to determine if there was any wilting which would normally result from escaping gas; . . . . Defendant also attempted to show that the break occurred at the point of intersection with the water pipe, thus inferring that the contractor installing the water system . . . was responsible for the break. To be weighed against his testimony . . . was the fact that the vegetation test itself was of no value during the winter months [and] that the break itself was not limited to a hole at the bottom of the gas main . . .

but . . . amounted to a complete severance of the main into two separate pieces . . . . Since some . . . years had elapsed since the water line was installed, it is difficult to believe that the break was occasioned by that installation." Therefore, the verdict of the jury, holding defendant liable for the damages caused by the explosion was sustained.

■ In *Williams* v. *City of Long Beach*, 268 P.2d 1061 (Cal. 1954), where a claim is brought for damages resulting from an explosion caused by gas escaping from defendant's main, the court held that the burden of producing evidence sufficient to offset or balance the inference of negligence, arising from the application of the doctrine of *res ipsa loquitur* in cases like this one does not require that defendant prove himself free from negligence by a preponderance of the evidence. The verdict in defendant's favor was sustained because its evidence established that the main was in fair condition, was properly installed, the break in the pipe could have been due to a natural cause like a settling condition or earth movement of some nature and because the leak occurred during such a brief period that there was no negligence in failing to discover it.

■ In *Louisville Gas and Electric Co.* v. *Sanders*, 249 S.W.2d 747 (Ky. 1952), it was concluded that the *res ipsa loquitur* doctrine applies to cases where damages suffered by trees, shrubs, and grass are traced to gas escaping from a nearby gas line. The judgment against appellant was affirmed. Its theories that the leak (a) was distant from the property; (b) it was so small; and (c) the gas which caused the damage contained no carbon monoxide, hence, it could not have been gas from the gas line in question, was controverted by its experts.

In the case at bar it seems evident to us that appellee handled a gas which might cause damage to persons and vegetation; that there was an escape of gas from a cylinder containing said substance while it was in its business and

that to avoid the dangerous situation created by said escape of gas, the cylinder was ordered to be transferred and was transferred in a truck and submerged in a lake some distance from the scene of the accident, action which did not diminish substantially the danger to the vicinity, presumably until after the cylinder was under water in the lake.

The only evidence produced by appellee to overcome the inference that the damages proved caused by the escape of gas from the cylinder in question were the result of appellee's negligence was the removal of the cylinder from the scene of the accident. Defendant did not show, as it was bound to do, what means it utilized to stop the escape of gas promptly, or that it was not feasible; that such escape of gas was not foreseeable; that it did not occur as a result of defendant's negligence, and that, in any event, the only available measure at that time was to transfer the defective cylinder to a place some distance from the scene of the accident.

■ Under such circumstances we conclude that defendant did not rebut the inference of negligence with evidence so convincing as to justify the conclusion that the damages were due to causes not under defendant's control, or to a fortuitous accident, and that, in any event, they were not due to its negligence, since the escape of gas from the cylinder was not due to any action on its part, and, when it occurred it acted with due diligence and took the most effective available measure to prevent it.

Therefore, the judgment rendered will be reversed and another rendered ordering defendant to pay $1,675 for damages to appellant's vegetation and fowl, plus $300 for attorney's fees.