365 So.2d 305 (1978)
Mildred PLANT, etc.
v.
R. L. REID, INC., a corp.
77-575.
Supreme Court of Alabama.
November 17, 1978.
Rehearing Denied December 8, 1978.
Richard Bounds and John T. Crowder, Jr. of Cunningham, Bounds, Byrd, Yance & Crowder, Mobile, for appellant.
William H. Hardie, Jr. of Johnstone, Adams, May, Howard & Hill, Mobile, for appellee.
Bibb Allen of London, Yancey, Clark & Allen, Birmingham, for American Consulting Engineers Council, Consulting Engineers Council of Texas, Consulting Engineers Council of Alabama, Alabama Soc. for Professional Engineers, Nat. Soc. of Professional Engineers, Amicus Curiae.
SHORES, Justice.
This is the third appeal of this case. In R. L. Reid, Inc. v. Plant, Ala., 350 So.2d 1022 (1977), we reversed and remanded a judgment in favor of the plaintiff because she had failed to show by the evidence that the defendant Reid had breached any duty owing to her decedent. The facts out of which the controversy arises are sufficiently stated in that opinion and need not be restated here. On remand, the trial court granted the defendant's motion for summary judgment and the plaintiff appealed.
The theory of the plaintiff's case was and is that Reid was negligent in failing to specify a guard to shield the nip point of the head pulley in plans and specifications for modifying the bulk loading facility at the State Docks. The plaintiff concedes that the contract between the State Docks and Reid did not call for any safety features. She contends, however, that a guard of some kind would commonly have been recommended by engineers on such projects in 1964, that Reid owed a duty to third *306 persons to specify such guards, and was negligent in failing to do so. Although the evidence adduced at trial before the prior appeal established that the State Docks did not follow all of Reid's specifications, the plaintiff did have evidence by the chief engineer of the State Docks that had the specifications included a guard over the nip point (where Mr. Plant met his death), he knew of no reason why it would not have been installed. If the standards of the profession in 1964 required engineers to include safety features in all plans and specifications and if to meet established safety standards a guard was required, Reid could be found to have breached its duty in not specifying such guards. Whether its failure to do so was the proximate cause of Mr. Plant's death, even though the State Docks did not adopt all of Reid's plans, is a fact question.
On the last appeal, we held that the plaintiff's evidence was deficient in that it consisted only of an opinion by an expert who did not testify that the state of the art in 1964 required that guards be specified by engineers whether engaged to include safety features in plans or otherwise.
In opposition to the defendant's motion for summary judgment, on remand, plaintiff has now offered the affidavit of another expert, Mr. Homer Thornhill, Jr., which is as follows:
 "AFFIDAVIT
"STATE OF TEXAS
COUNTY OF HARRIS
"Before me, the undersigned authority in and for said County and State, personally appeared HOMER THORNHILL, JR., who being first by me duly sworn doth depose and say as follows:
"`My name is Homer Thornhill, Jr., and I have been a licensed registered engineer since 11/7/61 and I am licensed (or registered) engineer in the state of Texas. I have reviewed voluminous material concerning the Defendant, R. L. Reid, Inc.'s Motion for Summary Judgment and it is my opinion that R. L. Reid, Inc.'s conduct in preparing the plans and specifications did not meet with standards of conduct imposed on licensed engineers in Alabama at that time. Even though the plans and specifications did not call for a `guard' at nip hazard, an engineer has a professional responsibility to incorporate safety features in his plans. In my professional opinion, safety was extremely important consideration in the design of machinery and equipment such as the conveyor system involved in this case prior to 1964. At the time of the revisions on the bulk handling equipment, the engineer should have recognized the extremely dangerous nip hazard and in the course of modernization of the equipment it should have been brought up to safety standards applicable in 1964. There were very basic simple guards available and in use throughout 1964 that would have virtually eliminated the hazard complained of in this law suit.
"Sufficient work was performed to accomplish the increase in capacity of the conveyor system that was desired by the State Docks. Even though the original system might have been reinstalled at the time of the accident, this would not have affected the guard that would have been in place had the engineer specified it.'
 /s/ Homer Thornhill, Jr.
 HOMER THORNHILL, JR.
 "Sworn and subscribed to before me
this 3rd day of May, 1978.
 /s/ Viola Y. Jaudon
 Viola Y. Jaudon
 NOTARY PUBLIC in and for
 Harris County, Texas
 My commission expires
 11/30/78"
We again reverse and remand.
By affidavit, the plaintiff has offered the statement of an expert, whose opinion may or may not be accepted by the jury, that, in his opinion Reid's conduct in preparing the plans and specifications did not meet the standards of conduct imposed on licensed engineers in Alabama at the time the plans and specifications were prepared (1964). This testimony supplies inferences *307 from which a jury may conclude that Reid had a duty to specify guards, and that its failure to recommend guards in the plans and specifications submitted for modification of the bulk loading facility at the State Docks fell short of the safety standards applicable to and practiced by professional engineers in 1964. It is a jury's function to determine whether a given hazard was foreseeably great enough to make particular conduct negligent.
True, it remains Reid's position that guards were not necessary because, first, it did not undertake to make safety recommendations and was not asked to do so; and, second, had the plans and specifications prepared by it been followed by the State Docks, the need for a guard would not have existed. The plaintiff's position is that an engineer had a professional responsibility to incorporate safety features in all plans and specifications; and this responsibility could not be discharged in 1964 in designing the modifications on the bulk loading facility at the State Docks without specifying guards.
This, in itself, creates an issue of fact, mandating reversal of the trial court's order granting the defendant's motion for summary judgment.
Although the plaintiff has the burden of reasonably satisfying a jury from all of the evidence that the defendant owed her decedent a duty and that it breached that duty, proximately causing the death of her decedent, the defendant, as movant for summary judgment, must carry the burden of negating the existence of any issue of fact. Donald v. City National Bank, 295 Ala. 320, 329 So.2d 92 (1976). Reid has failed to carry that burden. Upon a consideration of the motion for summary judgment and the evidence adduced in connection with that motion, we cannot say, as a matter of law, that the defendant owed no duty to the plaintiff's decedent or that if so, the duty was not breached in the instant case. Neither can we say, as a matter of law, that a duty existed and was breached. Whether such a duty existed and whether it was breached are matters for the jury, based upon the evidence. Hall v. Dexter Gas Co., 277 Ala. 360, 170 So.2d 796 (1964). The plaintiff is entitled to attempt to convince a jury that Reid owed a duty to her decedent, and breached it, proximately resulting in the decedent's death. Because the evidence produced by the plaintiff's affidavit, in opposition to the motion for summary judgment, furnished evidence from which the jury may draw an inference in support of her theory of liability, the trial court erroneously granted summary judgment in favor of the defendant.
REVERSED AND REMANDED.
FAULKNER, JONES, EMBRY and BEATTY, JJ., concur.
TORBERT, C. J., and BLOODWORTH and MADDOX, JJ., dissent.
TORBERT, Chief Justice, and BLOODWORTH and MADDOX, Justices, (dissenting).
We must respectfully dissent from the majority opinion which holds that the trial court erroneously granted summary judgment for the defendant because the plaintiff's affidavit of Homer Thornhill, Jr., in opposition to motion for summary judgment, furnished sufficient evidence from which a jury may draw an inference in support of the plaintiff's theory of liability.
Although we recognize that the movant for summary judgment in a negligence action has a heavy burden, we believe the defendant sustained its burden here.
As to paragraphs 1 and 2 of the complaint, it is admitted that R. L. Reid, Inc. was consulted and did prepare plans and specifications to speed up the belt at the State Docks.
Paragraph 3 states that "alterations were subsequently made in accordance with such specifications." (Both sides agree, however, that the alterations were not made as specified; therefore, there was no triable issue in paragraph 3.)
Paragraph 4 states that the plans (which were not followed) "should have required that the conveyor be equipped with features *308 to prevent slippage of the conveyor belt . . ."
Paragraph 6 predicates liability on the theory that the conveyor belt was slipping, that the deceased was "putting rosin in between the drive pully or drum and the conveyor belt in order to prevent slippage. . ." when he was pulled into the machinery.
It is undisputed that the deceased used a fixed platform, neither designed nor recommended by Reid, in order to get to the place where he could put the rosin between the pulley and the belt.
Paragraph 7 states that the death of plaintiff's intestate was the "proximate result of the negligence of the Defendants in negligently failing to place a safety guard or shield over the moving portions of the conveyor system" to protect employees.
The plaintiff's theory of liability is that Reid was negligent in failing to specify a guard to shield the nip point of the head pulley in plans and specifications for modifying the bulk loading facility at the State Docks. Mr. Thornhill stated that the engineer, Reid, should have recognized the extremely dangerous nip hazard and should have, in the course of modernization of the equipment, brought it up to safety standards applicable in 1964. He further stated that there were very basic simple guards available and in use during 1964 that would have virtually eliminated the hazard complained of in this lawsuit.
In short, plaintiff says that Reid was obligated to design a guard rail, that if it had been designed, the State Docks would probably have installed it, and had it been installed, the deceased would not have suffered his injury and death; however, it is undisputed that the Docks did not follow Reid's plan, and Reid's affidavit states that had its plans been followed, there would have been no slippage. If there would have been "no slippage," even plaintiff's complaint shows there would have been no injury.
Mr. Thornhill's statement may be sufficient to get past the point of summary judgment and make it an issue of fact as to whether or not Reid failed to meet the standards of the profession existing at the time it performed the services with respect to the need for including a guard to shield the nip point of the head pulley in its plans and specifications. This would meet one of the problems alluded to in Justice Shores' opinion in the second case, Reid v. Plant, 350 So.2d 1022 (Ala.1977), namely, that the plaintiff's evidence on the last appeal was deficient in that it did not include an expert's opinion that the state of the art in 1964 required that guards be specified by engineers whether engaged to include safety features in plans and specifications or otherwise.
Reid's affidavit and the drawings attached [which we append hereto], without dispute, show not only that Reid's plans and specifications were not followed but that the machinery at the time of the accident was in the same arrangement as it was when Reid was asked to draw plans to speed up the belt; that the condition as it existed at the time of Mr. Plant's accident, regarding belt speed, chain guard and chain drive, was the same as existed in 1964.
In essence, the theory of liability of Reid is: Reid, when called upon to design a system to speed up the conveyor belt, should have recommended a guard, which the Docks may or may not have installed.
Thornhill states:
"Even though the original system might have been reinstalled at the time of the accident, this would not have affected the guard that would have been in place had the engineer specified it."

With all due respect, the emphasized portion of this statement overlooks the fact that our former opinion also concluded that had the plans and specifications recommended by Reid been adopted by the State Docks, "the nip point of the head pulley would not have been accessible to humans and, therefore, a guard would not have *309 been required to meet the standards of the profession as they existed in 1964."
Can an engineer be held liable for injuries which could not have occurred had his modifications been adopted? The answer is emphatically not! Bayne v. Everham, 197 Mich. 181, 163 N.W. 1002 (1917).
This Court held on the former appeal, at page 1027:
"The plaintiff apparently concedes that Reid would not be liable had its plans and specifications contained a recommendation that the nip point be guarded and the State Docks had failed to follow the recommendation. We can see no difference where it is conceded that Reid recommended that the belt feeder be moved some 1'8" so as to make it inaccessible to workmen, and this recommendation was not followed by the State Docks. [i. e. no proximate cause.]"
The point of all of this is simply that in order to avoid an adverse summary judgment, it seems to us that the plaintiff should have not only submitted evidence to establish the standard of care imposed upon engineers in 1964, but also presented evidence that the specifications and recommendations of the defendant Reid had been complied with and been followed prior to the accident.
If Reid's affidavits be taken to be true, as they must, and if the State had followed its recommendations, the nip point of the head pulley would have been so located that no person would have had access thereto and, therefore, there would have been no necessity to have a guard installed at that point to shield it. Additionally, Reid's statement that there would have been no belt slippage if his plans had been followed is uncontradicted. Thus, it seems to us, that the defendant met its burden and the summary judgment ought to be affirmed.
Here, we have an engineer who was hired to prepare plans and specifications which admittedly the State failed to follow and which admittedly had it followed, there would have been no need for the plaintiff to put rosin between the belt and the drum, and the point at which the plaintiff's decedent was caught into the machine and was killed would have been inaccessible to the plaintiff's decedent and, therefore, his death would not have occurred.
The majority holds that an engineering firm may be held liable for an accident that would not have happened had its plans and specifications been followed. How can Reid's negligence be the proximate cause of the plaintiff's decedent's death?
It is clear from the authorities that in order for an engineer to be liable for alleged negligent design it must first be shown that the work claimed to be defective was constructed in accordance with the plans and specifications he prepared. Wheat Street Two, Inc. v. James C. Wise, Simpson, Aiken & Associates, Inc., 132 Ga. App. 548, 208 S.E.2d 359 (1974); McGuire v. United Brotherhood of Carpenters, 50 Wash.2d 699, 314 P.2d 439 (1957); Dresco Mechanical Contractors, Inc. v. Todd-Cea, Inc. v. J. W. Austin, Jr. and Associates, Inc., 531 F.2d 1292 (5th Cir. 1976).
Even though we are reluctant to approve the grant of summary judgment in a negligence case, we are compelled to state that it was appropriate in this particular case.
[See following illustration.]
*310 
*311 
*312