THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DANIEL KISSINGER, Defendant-Appellant.

First District (3rd Division)   No. 82—1833

Opinion filed July 20, 1983.

Norman Nelson, Jr., of Chicago (Ray Sabransky, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Paula Carstensen, and Randall E. Roberts, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Daniel Kissinger, was charged with theft of services and obtaining services with intent to defraud. The services in question

involved the transmission of 97 mailgrams and five overseas telephone calls, all of which were charged to another person without that person's authorization. After a trial without a jury, he was found guilty of both charges and was sentenced to periodic imprisonment for four weekends.

Victor Weiss operated an automobile repair business in Kenilworth, Illinois. Over defense objection, Weiss testified that he repaired the brakes of defendant's pick-up truck in July 1981. A month later defendant complained that the brakes were not working properly, and installation of a new part cost defendant an additional $80.

In October 1981, Weiss, who is Jewish, began receiving magazines to which he had not subscribed. They were addressed to J. Mengele, whom Weiss recognized as a German war criminal. Other addressees were Nazi generals and admirals. In November 1981, Weiss began to receive confirmations of mailgrams sent in his name to various people around the country. Weiss was billed a total of $450 for the mailgrams, none of which had been sent or authorized by him. Some of the mailgrams announced that Weiss was about to merge with a large company. Other mailgrams asserted that because the addressees owed Weiss at least $400, he did not wish to do business with them. Many mailgrams were sent to people in the neighborhood informing them that, because they were classified as semites, Weiss did not want to do business with them. Merchandise was also ordered in Weiss' name and unauthorized newspaper ads for his business resulted in thousands of telephone calls.

Thomas Hartel, a friend and fellow college student of defendant, testified for the State that defendant had complained of being ripped off by Weiss, "that Jew in Kenilworth." In the presence of another student, Adam Schellenberg, defendant added that possibly something could be done about it. In November 1981, Schellenberg told Hartel and defendant that he had placed orders for magazines and merchandise for Weiss. During the same month, defendant and Hartel were present when Schellenberg called in mailgrams for Weiss Tire Company.

On cross-examination and on examination by the court, Hartel stated that it was Schellenberg's idea to send the mailgrams and that he had not seen defendant order any of them. Schellenberg was harassing Weiss in exchange for defendant's help in writing a letter to a school dean. Hartel also stated that he had been charged with regard to sending the mailgrams.

After a recess, over defense objection, the State was allowed to recall Hartel on the grounds that new evidence had come to light.

Hartel then testified that he and defendant had helped write the mailgrams and had helped look up the addresses. Furthermore, it was defendant's idea to use Mengele's name. Defendant, Schellenberg and the witness all made overseas telephone calls and charged them to Weiss.

Adam Schellenberg testified for the State and corroborated the testimony of Hartel that defendant had helped compose the mailgrams and had helped find addresses, and that both he and defendant had made telephone calls to England and New Zealand in Weiss' name. It was Schellenberg's idea to send mailgrams, and it was defendant's idea to use Mengele's name.

Defendant testified that he had been a little upset about the brake work done by Weiss and he told Hartel and Schellenberg that he had been ripped off by Weiss, referring to him as a Jew. Defendant denied expressing any desire to get even with Weiss, denied sending any magazines to Weiss or making any telephone calls in Weiss' name. Defendant was not present on November 7 and 20 when mailgrams were sent, nor did he have any previous knowledge of these mailgrams. Although Schellenberg told him of his plan to send the November 14 mailgrams, defendant was present for only a few minutes and he did not participate in any way.

On cross-examination, over defense objection, defendant was asked whether his referral to people as Jews ever had an anti-semitic connotation and whether he was anti-semitic, whether he harassed Jews in his business and whether he automatically added a surcharge for all Jewish customers. Defendant denied all this and denied that he had dressed up as Hitler.

Moreen Alexander, a customer of defendant, testified in rebuttal that defendant informed her he did not like working in West Wilmette because of all the Jews and though that they should get rid of West Wilmette. Schellenberg testified in rebuttal that defendant told him he automatically added a $5 surcharge for all of his Jewish customers. In October 1981, Schellenberg saw defendant walking on their campus dressed as Hitler, complete with ROTC uniform, boots, swastika, penciled-in mustache, and hair parted on the side. Defendant was not dressing in that manner for a Halloween party.

On appeal defendant contends that the trial court erred in allowing testimony regarding materials sent prior to the alleged offense; that it erroneously admitted evidence regarding the ethnic background of Weiss and of the persons whose names appeared on the magazine labels; that it erred in allowing defendant to be cross-examined with regard to his anti-semitic attitude and behavior and in al-

lowing rebuttal testimony based upon defendant's denials of such behavior; that it erred in allowing Hartel to be recalled; that the prosecutor's closing argument was prejudicial; and that defendant was not proved guilty beyond a reasonable doubt.

We first address defendant's contention that the trial court erred in admitting evidence that, prior to the alleged offense, defendant sent magazines to Weiss in the names of Nazi war criminals.

■ Evidence of other crimes is generally inadmissible to show that defendant had a propensity to engage in the criminal activity with which he was charged. (*People v. Lehman* (1955), 5 Ill. 2d 337, 125 N.E.2d 506.) However, such evidence may be admissible if relevant for another purpose. (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) Proof of other crimes tending to establish motive, intent, absence of mistake or accident, identification, or common scheme or plan has been held admissible. *People v. Lehman.*

■ We reject defendant's argument that this evidence was offered merely to show defendant's propensity to commit the crime with which he was charged. We find rather that it tended to establish a common scheme to harass Weiss by ordering items and services in his name with intent to defraud. In addition, the fact that some of the magazines sent by defendant were addressed to J. Mengele, the war criminal whose name was also used as signator in the mailgrams, is relevant with regard to the probability of defendant's participation in the crimes charged. While this evidence could have been excluded if the trial court found that its prejudicial effect outweighed its probative value, such balancing is in the first instance left to the sound discretion of the trial court and we cannot say that the court abused its discretion. *People v. Kirkwood* (1980), 82 Ill. App. 3d 252, 402 N.E.2d 677.

Defendant also contends that the trial court erred in allowing testimony that Weiss and some of the recipients of the mailgrams were Jewish and that the labels on the magazines bore the names of Nazi war criminals. He urges that such evidence had no relevancy to the present issues and served only to prejudice defendant.

■■ Prejudicial evidence which has no relationship to a defendant's guilt or innocence should not be admitted. (*People v. Bernette* (1964), 30 Ill. 2d 359, 197 N.E.2d 436.) The evidence in question here was prejudicial to defendant in that it implied that he was anti-semitic. Yet, it did bear on his guilt and was therefore properly admitted. The evidence indicated the anti-semitic nature of defendant's harassment of Weiss. Moreover, the use of Mengele's name in both the magazines and the mailgrams not only links one incident with the

other, thus revealing a common scheme to harass Weiss in a uniquely anti-semitic manner, but also tends to implicate defendant in both incidents.

■ Defendant next contends that the trial court erred in permitting him to be cross-examined with regard to his attitude toward Jews and that it further erred in allowing rebuttal evidence based upon that cross-examination.

On direct examination defendant not only denied participating in any harassment scheme, but he also denied wanting to get even with Weiss. He further stated that his reference to Weiss as a Jew was not unusual nor used in a derogatory manner. Due to the anti-semitic nature of the mailgrams therefore, we find that the evidence that the State attempted to elicit in an effort to establish defendant's negative attitude toward Jews and toward Weiss in particular was relevant in that it tended to demonstrate that defendant participated in sending the mailgrams. Defendant's attitude toward Weiss and Jews was a material issue in this case, and it was proper to offer rebuttal evidence to contradict defendant's denials. *People v. Gardner* (1977), 47 Ill. App. 3d 529, 362 N.E.2d 14.

Defendant next argues that it was improper for the trial court to allow the State to recall Hartel as a witness after he was excused. Although the court allowed Hartel to give further testimony based upon the State's representation that new evidence had come to light, defendant maintains that no new evidence was offered but rather that Hartel's testimony on recall was completely contradictory to his earlier testimony.

■ ■ Permission to recall a witness is within the sound discretion of the trial court. (*People v. Thompson* (1978), 57 Ill. App. 3d 134, 372 N.E.2d 1052.) Contrary to defendant's contention, Hartel's testimony on recall was not completely contradictory to his earlier testimony. Hartel initially testified that defendant had not actually placed any of the mailgram orders himself. The State failed at that time, however, to ask whether defendant had helped in any other way. Therefore, Hartel's testimony on recall regarding defendant's role in composing the mailgrams did not contradict his earlier testimony. Recall of a witness for the purpose of allowing the State to elicit additional testimony is within the court's discretion. (*People v. Faulkner* (1978), 64 Ill. App. 3d 453, 381 N.E.2d 321; *People v. Thompson* (1978), 57 Ill. App. 3d 134, 372 N.E.2d 1052.) The only inconsistency concerned the number of occasions on which both defendant and Hartel were present during the sending of mailgrams. Hartel at first stated that defendant was present on one occasion and later asserted

that he was present twice. There was no evidence of collusion by the prosecutor, however, and defendant had ample opportunity to cross-examine Hartel a second time. Furthermore, since Hartel was recalled during the State's case, defendant was not prevented from preparing his case to counter the additional testimony. We find no prejudice to defendant and conclude that the trial court did not abuse its discretion in allowing the State to recall Hartel as a witness.

Defendant next maintains that he was denied a fair trial because of certain prejudicial remarks made by the prosecutor during closing argument. Specifically, the prosecutor referred to defendant as "a hate spewing bigot" and "a hot-tempered bigot." In addition, the prosecutor stated that the issue of anti-semitism was "relevant because it *** offended Mr. Weiss who is obviously Jewish" and that there were "far reaching ramifications beyond the criminal complaint."

Defendant neither objected at trial when these comments were made nor did he raise them in a motion for a new trial. Consequently, the issue has been waived. (*People v. Sullivan* (1978), 72 Ill. 2d 36, 377 N.E.2d 17.) Moreover, in this trial without a jury, the remarks complained of could not be considered sufficiently prejudicial to warrant reversal.

Defendant urges that the trial court revealed that it had been influenced by these prejudicial remarks when it commented, upon sentencing defendant, "I wish I could send you to Dachau to take a tour of that. There is no room in this world for hate."

This comment was made, however, at the time of sentencing, after defendant had already been found guilty. Since this was a trial without a jury and since there is no indication in the record that the comments were considered in making a determination of guilt, it must be presumed that the court relied only upon proper evidence in reaching a determination on the merits. *People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649.

Defendant finally contends that he was not proved guilty beyond a reasonable doubt in that undue weight was given to the testimony of Hartel and Schellenberg where that testimony was both contradictory and vague as to dates and times. Defendant also urges that the testimony of these two witnesses, as accomplices, should have been viewed with suspicion.

In the present case two eyewitnesses clearly and positively testified that defendant participated in the offenses. While their position as accomplices required that their testimony be scrutinized carefully by the trial court, we note that the court was aware of their position

as accomplices when it made a determination with regard to the credibility of their testimony, much of which was corroborated by the physical evidence. Furthermore, the testimony of the accomplices with regard to dates was sufficiently specific. Defendant was proved guilty beyond a reasonable doubt.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RIZZI and WHITE, JJ., concur.