Appellant, Sharon Brooks, was charged with unlawful communication and presenting a firearm, in violation of §§ 11-6-11 and 11-6-38, respectively, of the 1980 General Code of the City of Birmingham. She was convicted in the Birmingham Municipal Court of both charges and appealed to the Circuit Court of Jefferson County, where she was given a trial de novo by jury. The jury found appellant not guilty of presenting a firearm, and guilty of unlawful communication. Appellant was sentenced to 180 days in jail and fined $500.
Ms. Janice Martin testified that on July 12, 1982, she was employed by Central Bank as administrator of the trust department. Martin returned home from work around 5:00 to 5:15 p.m. and she received a telephone call in which the caller stated to Martin:
 "Hey, bitch, what you doing, you just got home? I got your man. What you going to do now? You can't do a god damn thing, you mother fucking bitch, you two-job working asshole." *Page 21 
Martin identified appellant as the person whom she heard speak the above quoted language and based her identification on prior occasions in which she had heard appellant's voice in person and in subsequent calls of a similar nature.
Martin contacted the telephone company and filed a complaint with the Annoyance Call Bureau for South Central Bell Telephone Company. Martin began taping the telephone calls which she received after the initial call, and also kept a detailed record of the time and date of the subsequent calls. The tape of subsequent calls reflects a series of calls which began on July 12, 1982, and continued through August 1, 1982. During this time period, Martin recorded 161 telephone calls which she received from appellant. On July 31, 1982, Martin received 57 calls from appellant on that single day.
Ms. Joann Williams, a representative of South Central Bell Telephone Company, testified that call-trace equipment was placed on Martin's telephone line and this equipment showed that the calls were made from appellant's Birmingham apartment. According to Williams, the call-trace equipment records the date, time and originating telephone number of calls made to the subject residence. The customer is told to keep a record of the date and time he or she receives the harassing phone calls. The customer's records are compared with the call-trace equipment records in order to verify the source of the telephone calls.
The defense called Mr. Marvin Powell as an adverse witness. The record is by no means clear, but it appears that Powell was called as a witness by appellant in an attempt to show that Martin was biased against appellant and may have testified falsely against appellant because appellant had sworn out warrants for Powell for attempted rape and assault. Powell testified that he had previously lived with Martin and she had a child by him. Their relationship ended; however, they remained friends and Powell kept in contact with his child. Powell stated that he had been with appellant the night of July 11, 1982, and was arrested on July 12, 1982, for attempted rape and assault. (It appears that appellant was the complainant who initiated the charges against Powell, but this testimony was not presented to the jury.) Powell testified that he saw appellant and Martin in the City Hall parking lot on July 12, 1982.
Martin had testified earlier that she had gone to City Hall to pay a parking ticket and saw Powell there. Appellant was also present, according to Martin, and she appeared to have been beaten and was bruised.
Appellant testified in her own defense and denied making any telephone calls to Martin. She denied that the voice on the tape was hers, and further denied the existence of any type relationship between her and Powell.
 I
At trial the City introduced Exhibits Numbered 12 and 13, which were two pages of a letter from the telephone company written on August 27, 1982, to the Chief of the Birmingham Police Department furnishing him with documentation of the call-trace information. Ms. Joann Williams, custodian of the telephone company business records, testified that it was in the regular course of her employer's business to report to the Police Chief investigations of telephone calls made by the Annoyance Call Bureau. Appellant contends that these records were inadmissible because: (1) the proper foundation was not laid for introduction of the call-trace information, and (2) statements in the documents characterizing the caller's language as harassing and obscene constituted inadmissible hearsay and should have been excluded.
Appellant contends that a proper predicate for introduction of the call-trace information requires that the City prove the same elements that are required when a sound recording is introduced into evidence, relying on Voudrie v. State,387 So.2d 248, 256 (Ala.Cr.App.), cert. denied, 387 So.2d 256 (Ala. 1980). We disagree. *Page 22 
The call-trace information is wholly unrelated to sound recording; the two are obviously dissimilar, and therefore,Voudrie has no application to the facts of this case.
Section 12-21-43, Code of Alabama (1975), pertaining to the admissibility of business records, states:
 "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of said act, transaction or event if it was made in the regular course of any business and it was the regular course of the business to make such memorandum or record at the time of such act, transaction, occurrence or event, or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility. The term, `business' shall include a business, profession, occupation and calling of every kind.
(Code 1940, T. 7, § 415.)" (Emphasis added.)
In Hall v. Dexter Gas Company, 277 Ala. 360, 170 So.2d 796
(1965), the court allowed "a so-called tachograph disc record or chart" into evidence under the business record exception to the hearsay rule, even though the evidence did not "clearly disclose what a tachograph is or exactly how it works."277 Ala. at 365, 170 So.2d at 801. See also Harris v. State,44 Ala. App. 449, 212 So.2d 695 (1968).
In the case sub judice, the trial court admitted the information obtained from the call-trace equipment as a business record after the state laid the proper predicate. Williams testified before the jury that she did not personally place the equipment on the telephone lines, nor did she know if it was correctly installed or correctly working. In our view the inner workings of the call-trace equipment do not affect the admissibility of the information; rather they go to the weight the jury might accord this evidence. There was no error in admitting this call-trace evidence as a record kept in the regular course of business.
Appellant correctly points out that a document introduced under the Business Records Act is "merely a statutory exception to the hearsay rule and in no way abrogates the opinion evidence rule." Pierce v. State, 52 Ala. App. 422, 426,293 So.2d 483, 485 (1973). See C. Gamble, McElroy's AlabamaEvidence ± 254.01 (4) (3d ed. 1977). The letter, which was admitted into evidence, and which contained the call-trace information, also contained Martin's characterization of the telephone calls as being "harassing or obscene" (as stated in appellant's brief). These characterizations were clearly Martin's opinion and constituted hearsay which cannot be legitimized by its introduction as part of a business record. Martin's opinion should have been omitted from the documents; however, we find that this error did not prejudice the substantial rights of appellant and it is therefore error without injury. See A.R.A.P. 45.
The trial court in its oral instructions to the jury read the complaint of the City of Birmingham pertaining to the unlawful communication charge, as follows:
 "Comes the City of Birmingham, Alabama, a municipal corporation, and complains that Sharon Brooks, within twelve months before the beginning of this prosecution, on to-wit: July 12, 1982, and within the City of Birmingham, or the police jurisdiction thereof, at to-wit: 1921 13th Way Southwest, unlawfully communicated with Janice Martin, a person, by telephone for the purpose of annoying, molesting or harassing said Janice Martin by calling Janice Martin at the aforesaid address and using lewd, lascivious or indecent words or language toward her by calling Janice Martin, to-wit: A whore, a bitch, and mother fucker, contrary to and in violation of Section 11-6-11 of the general code of the City of Birmingham, Alabama, 1980, or as amended."
The trial court further charged the jury:
 ". . . at this time the Court will read to you Section 11-6-11 of the general code *Page 23 
of the City of Birmingham: `(a) It shall be unlawful for any person to communicate with another person by telephone, telegraph, mail, or any other form of written or electronic communication and address to or about such person, any lewd, lascivious or indecent words, or language.'"
Martin testified at trial to the exact words stated to her by appellant in the telephone call of July 12, 1982. A tape recording of subsequent telephone calls was properly introduced into evidence. Appellant had every opportunity to, and did in fact, extensively cross-examine Martin concerning the telephone call statements made to her on July 12, 1982, and subsequently. There was abundant evidence from which the jury could reach its own conclusion as to whether appellant's telephone calls and statements were "annoying, molesting, or harassing," and "lewd, lascivious or indecent." The jury's verdict that appellant was guilty of unlawful communication, as charged, is fully supported by the testimony of Martin, the call-trace evidence, and the tape recordings of telephone conversations. Martin's hearsay statements in the letter containing the call-trace information obviously had no real bearing on the jury's decision, and their admission did not prejudice the substantial rights of appellant. We therefore find no error.
 II
Appellant called Powell as an "adverse" witness, and attempted to impeach him by asking if he had ever been convicted of robbery. He answered negatively. The prosecutor objected, and the trial court sustained the objection and instructed the jury to disregard the question. Aside from the question of whether appellant could properly attempt to impeach a witness whom she had called to testify, we observe that Powell was not a key witness in the case. His testimony had little or no bearing on the issues before the jury. Powell's testimony was basically cumulative of Martin's as to their relationship and as to placing appellant and Martin in the same parking lot on July 12, 1982. The instructions to the jury to disregard Powell's "no" answer to appellant's inquiry as to whether he had been convicted of robbery did not prejudice appellant. We find no error here which injuriously affected appellant's substantial rights. A.R.A.P. 45.
 III
Last, appellant contends that the trial court committed reversible error in admitting the tape recordings of appellant's subsequent telephone calls to Martin. Appellant correctly points out that generally evidence of collateral crimes "is not admissible if the only probative function of such evidence is to show bad character, inclination or propensity to commit the type of crime for which he is being tried." McElroy's, at 69.01 (1) and cases cited therein. However, such evidence may be admissible if relevant for other purposes. See McElroy's, at 69.01 (1) through 69.01 (12) and cases cited therein. Among the "other purposes" for which evidence of collateral crimes, or acts, may be admissible is when "such evidence, considered with other evidence in the case, warrants a finding that both the now-charged crime and such other crime were committed in keeping with or pursuant to a single plan, design, scheme or system." McElroy's, at 69.01 (6). See also Allen v. State, 380 So.2d 313 (Ala.Cr.App. 1979), cert. denied, 380 So.2d 341 (Ala. 1980). The tape recordings of appellant's subsequent telephone calls to Martin were properly admitted to establish a common plan or scheme of harassment.People v. Kissinger, 116 Ill. App.3d 826, 72 Ill.Dec. 362,452 N.E.2d 615 (1983) (harassment by mail); State v. Hagen,27 Ariz. App. 722, 558 P.2d 750 (1976) (harassment by telephone).
Based on the foregoing, this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur. *Page 24